**Romeo BERUBE**

v.

**WHITE PLAINS IRON WORKS, INC.**

**Civ. No. 1369.**

United States District Court
D. Maine, N. D.

Dec. 6, 1962.

Bruce S. Billings, Limestone, Me., for plaintiff.

Mitchell & Ballou, Bangor, Me., for defendant.

GIGNOUX, District Judge.

Plaintiff sues to recover damages for personal injuries alleged to have been sustained by him as a result of the negligence of the defendant on September 4, 1959 at Loring Air Force Base, Limestone, Maine, where both parties were working at the time. Defendant has moved for dismissal of the action on the ground that defendant "was not and is not subject to the service of process within the District of Maine * * *."

Defendant is a New York corporation, not licensed to do business within this state. At the time in question, it was engaged as a subcontractor in performing certain work for the United States Government on Loring Air Force Base. Defendant having no agent in the state upon whom service of process could have been made, the complaint and summons were served on the Secretary of State pursuant to Me.Rev.Stat. ch. 53, § 127 (Supp.1961), which provides for substituted service on a foreign corporation "which does business in this state" in any action against such corporation, "arising as a result of such corporation doing business in this state." [1] The parties agree that the initial question presented by the instant motion is whether this statute would be construed by the Maine courts to sustain the service of process in this case. Waltham Precision Instrument Co. v. McDonnell Aircraft Corp., 310 F.2d 20 (1st Cir. 1962); Brewster v. Boston Herald-Traveler Corp., 141 F.Supp. 760, 762 (D.Me.1956). Since this Court answers that question in the negative, it does not reach the further question raised by defendant's contention that an attempt by the Maine courts to assert jurisdiction here would transgress federal constitutional limits. Cf. Waltham Precision Instrument Co. v. McDonnell Aircraft Corp., supra.

■■ Loring Air Force Base was established some years prior to the accident, at which time there was in effect a statute by which the State of Maine ceded to the United States exclusive jurisdiction over lands which it might take [2] for constitutional purposes.[3] Such a grant results in a transfer of the sovereignty over the ceded land to the

1. The applicable portion of the statute reads in full:

"Any foreign corporation which does *business in this state without appointing* an agent as required by this section shall be deemed to have appointed the secretary of state, or his successor in office, to be his true and lawful attorney upon whom may be served all lawful processes *in any action or proceeding against such corporation, arising as a result of such corporation doing business in this state* and such service shall be of the same legal force and validity as if otherwise served on such corporation." (Emphasis added.) See Me.R.Civ.P. 4(d) (9).

Fed.R.Civ.P. 4(d) (7) provides that service is "sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

2. By Me.Rev.Stat. ch. 1, § 9 (1954) the Legislature consented to takings by the

United States, and by Section 10 of the same chapter exclusive jurisdiction of such lands was ceded by the state to the United States, the state retaining only concurrent jurisdiction for the service of state process thereon. It is well settled that such a reservation is intended to prevent these lands from becoming a sanctuary for fugitives from justice for acts done within the acknowledged jurisdiction of the state, and that it in no way interferes with the exclusive jurisdiction of the United States over such lands. Fort Leavenworth R. R. Co. v. Lowe, 114 U.S. 525, 533–38, 5 S.Ct. 995, 29 L.Ed. 264 (1885); United States v. Cornell, 25 Fed.Cas. 646 (No. 14,867) (C.C.D.R.I. 1819) (Story, J.); Olsen v. McPartlin, 105 F.Supp. 561 (D.Minn.1952).

These sections were subsequently repealed by Maine Public Laws 1959, ch. 213, § 2, effective Sept. 12, 1959, and new ones substituted which substantially reduce the extent of the jurisdiction to be granted by the state in the future. Me. Rev.Stat. ch. 1, §§ 4–A, 4–B (Supp.1961).

3. "The Congress shall have Power To * * * exercise exclusive Legislation

United States. Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1930); Mater v. Holley, 200 F.2d 123 (5th Cir., 1952). Territorial jurisdiction in such a case is vested in the United States, and state regulation of activities upon such land is illegal. Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 538, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938); Standard Oil Co. of California v. California, 291 U.S. 242, 54 S.Ct. 381, 78 L.Ed. 775 (1934).

■ Plaintiff does not contend that defendant's activities upon Loring Air Force Base constituted the doing of business in the State of Maine within the meaning of the Maine substitute service statute. Indeed, any such argument is foreclosed by the case of Brooks Hardware Co. v. Greer, 111 Me. 78, 87 A. 889, 46 L.R.A.,N.S., 301 (1913), in which the Supreme Judicial Court of Maine, interpreting a ceding act essentially identical to that in effect at the time of the establishment of Loring Air Force Base, held that a disabled veterans' home, established by Act of Congress, which owned lands upon which it operated a branch within the geographical limits of the state, did not have a place of business in the state.[4]

Plaintiff's sole point is that because defendant rented at least one piece of equipment and serviced its vehicles in communities near the Base, it did business in the State of Maine and became subject to the jurisdiction of the Maine courts. Cf. Ohio River Contract Co. v. Gordon, 244 U.S. 68, 37 S.Ct. 599, 61 L.Ed. 997 (1917). This argument is without merit. The accident which gave rise to the injuries complained of occurred in the course of defendant's work on the Base itself. It was in no way connected with the defendant's activities in the communities near the Base, nor is the present action in any sense one "arising as a result of" such activities. Such isolated transactions can afford no basis for sustaining the service of process in this case. See Rosenberg Bros. & Co., Inc. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923); A. G. Bliss Co. v. United-Carr Fastener Co. of Canada, 116 F.Supp. 291, 294 (D.Mass. 1953), aff'd per curiam, 213 F.2d 541 (1st Cir. 1954); cf. Waltham Precision Instrument Co. v. McDonnell Aircraft Corp., supra, affirming 203 F.Supp. 539 (D.Mass.1962).

Defendant's motion to dismiss is granted, and the action is dismissed.

in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;" U.S.Const. Art. I, § 8.

4. Other courts have reached contrary results in construing ceding statutes similar to the Maine statute. In Knott Corp. v. Furman, 163 F.2d 199, 206–07 (4th Cir., 1947), cert. denied, 332 U.S. 809, 68 S.Ct. 111, 92 L.Ed. 387 (1947), the factual

situation was closely similar to that in the present case. The plaintiff had been injured in a hotel operated by a foreign corporation on a military reservation. Service was made pursuant to Virginia's substitute service statute. The court held that for the purposes of the statute the defendant was doing business in the State of Virginia. In Ackerley v. Commercial Credit Co., 111 F.Supp. 92, 100–01 (D. N.J.1953), the court held, relying on the Knott case, supra, that in determining whether one of the defendants was doing business in New Jersey, it was not required to ignore the defendant's activities within a federal enclave.

The construction of the Maine statute by the Maine court is, of course, binding upon this Court.