**Emilien Richard LABBE et al.**

v.

**NISSEN CORPORATION.**

Supreme Judicial Court of Maine.

July 19, 1979.

---

Pierce, Atwood, Scribner, Allen, Smith & Lancaster by John J. O'Leary, Jr. (orally), Ralph I. Lancaster, Jr., Portland, for plaintiffs.

Thompson, Willard & McNaboe by Alan S. Polackwich (orally), Portland, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

This appeal presents a significant jurisdictional issue, and for us a novel one. The issue is the amenability of a non-consenting foreign corporation to a suit brought by Maine citizens in a Maine court upon a cause of action which arose beyond the borders of our state.

In the winter of 1975 Emilien Richard Labbe, of Lewiston, Maine, was stationed at a United States Air Force Base in Woodbridge, England. Living with him on that base were his wife, Marcelle Labbe, and their twelve-year-old daughter. Mary Labbe. The three are the Plaintiffs in this action.

On March 17, 1975, while Mary Labbe was attending a seventh grade physical education class on that Air Force Base a trampoline manufactured by the Defendant, Nissen Corporation, unexpectedly slammed shut on the girl's arm, fracturing it in three places.

After their return to Maine some months later the Plaintiffs commenced this action in Superior Court in Androscoggin County on February 7, 1977. In separate counts they alleged negligence, breach of warranty and strict liability on the Defendant's part. For the daughter the Plaintiffs sought damages for pain and suffering, permanent injuries and impairment of earning capacity. For the parents they sought damages for medical, hospital and drug expenses and for the parents' loss of companionship. Pursuant to M.R.Civ.P. 4(e) the Defendant was properly served with process at its corporate headquarters in Cedar Rapids, Iowa.

When the Defendant failed to seasonably serve and file an answer or otherwise plead to this complaint, upon the Plaintiffs' application, the Clerk entered a default on March 11, 1977. Later that month after the Plaintiffs moved for judgment by default, the Defendant requested the court to set aside the default on the sole ground that the court lacked personal jurisdiction over it. After hearing and argument by counsel, on June 24, 1977, the Superior Court set aside the default for good cause shown. Upon the Defendant's subsequent motion to dismiss for lack of personal jurisdiction, on September 26, 1978, the Superior Court dismissed the complaint. From that dismissal the Plaintiffs bring the case here on appeal.

We sustain the appeal.

The facts relating to the ties between the respective parties and the State of Maine are not disputed.

The Defendant is an Iowa corporation, with registered offices in seven states, including Massachusetts but not including Maine. It manufactures and sells athletic and sporting goods. Its wares include trampolines as well as other gymnastic equipment.

Although the Defendant has no office or place of business in Maine, its wares are sold here through independent and non-exclusive dealers. The dealers send their orders to the Defendant, and it ships the items directly to the customers. The sales in Maine amounted to approximately $400,-000 over the past five years, or about $80,-000 a year. This represents only 0.7% of the total sales of the Defendant's multistate and multi-national business. Its largest source of customers here are Maine schools, to which the Defendant directly sends sales literature on a regular basis. In addition, the Defendant advertises in more than ten magazines which are distributed in Maine. It has no employees, agents or representatives in the state, nor does the Defendant have a telephone number, mailing address, bank account or real estate here. It does not appear on this record that the Defendant has had occasion to file a state tax return in Maine nor has it heretofore been a party to a lawsuit in Maine.

The Plaintiffs attack the dismissal of their complaint on two fronts. First they assert that under traditional common law rules, through the Defendant's business activities in the state it was "present" here. Alternatively, they assert that under Maine's "doing business" statute, 13–A M.R.S.A. § 1213, the Defendant had submitted itself to the personal jurisdiction in Maine courts.

With equal vigor the Defendant maintains that its contacts with Maine are so tenuous that it would be a denial of due process for Maine courts to assert jurisdiction over it. Alternatively, the Defendant urges that, under a correct interpretation of 13–A M.R.S.A. § 1213, no jurisdiction over it exists here.

Resolution of this controversy requires us to re-examine the interplay, if any, between the common law basis and the statutory basis of acquiring jurisdiction over foreign corporations.

It is well settled that a state need not provide its courts with jurisdiction over every action which under the Due Process Clause of the Federal Constitution[1] could conceivably be brought in that state. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 440, 72 S.Ct. 413, 415, 96 L.Ed. 485, 490 (1952); *Missouri Pac. R. R. Co. v. Clarendon Boat Oar Co.,* 257 U.S. 533, 535, 42 S.Ct. 210, 211, 66 L.Ed. 354, 356 (1922); *Caso v. Lafayette Radio Electronics Corp.,* 370 F.2d 707, 710 (1st Cir. 1966). While on the one hand a court's reach over non-residents can fall short of the outer boundaries of due process, on the other hand it cannot overstep those boundaries. *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683, 705 (1977); *Perkins v. Benguet Consol. Mining Co., supra; Bowman v. Curt G. Joa, Inc.,* 361 F.2d 706, 714 (4th Cir. 1966).

Our first task, then, is to determine whether the statute here invoked, 13–A

1. Amendments V and XIV.

M.R.S.A. § 1213, confers jurisdiction on Maine courts as broadly as the Fourteenth Amendment and the Due Process Clause of Maine's Constitution [2] would permit, or whether this statute further limits that jurisdiction in a manner not constitutionally mandated. The provisions of the two constitutions are couched in terms identical in meaning. *Green v. State,* Me., 247 A.2d 117, 119 (1968).

13–A M.R.S.A. § 1213 provides in pertinent part:

> Every foreign corporation which does any business in this State without having been authorized to do business in this State thereby submits itself to the jurisdiction of the courts of this State, and also thereby designates the Secretary of State as its agent upon whom any process, notice or demand upon it may be served in any action or proceeding arising out of or in connection with the doing of any business in this State.

The Plaintiffs contend that under this statute Maine courts have jurisdiction over the Defendant because it is a foreign corporation which does "any business" in this state without having been authorized to do business in Maine. The Defendant maintains, on the contrary, that the statute, read in its entirety, confers jurisdiction on Maine courts only where the action "arises out of" or is in "connection with" business transacted in this state.

■ The determination of legislative intent is the fundamental rule in the interpretation of a statute. *State v. Hussey,* Me., 381 A.2d 665, 666 (1978); *State v. Tullo,* Me., 366 A.2d 843, 848 (1976). In seeking legislative intent the court must first look to the language of the statute itself. *In re Spring Valley Development,* Me., 300 A.2d 736, 742 (1973); *Lewiston-Auburn United Grocers, Inc. v. Johnson,* Me., 253 A.2d 338, 339 (1969).

In examining the language of this statute, it appears to be comprised of two parts. The first part reads: "Every foreign corporation which does any business in this State

without having been authorized to do business in this State thereby submits itself to the jurisdiction of the courts of this State . . . ." Separated from this part of the statute by a comma, and introduced by the words "and also," is a second clause which reads:

> "and also thereby designates the Secretary of State as its agent upon whom any process, notice or demand upon it may be served in any action or proceeding arising out of or in connection with the doing of any business in this State."

■ Nothing in a statute may be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible. *Finks v. Maine State Highway Comm'n,* Me., 328 A.2d 791, 799 (1974); *National Newark & Essex Bank v. Hart,* Me., 309 A.2d 512, 520 (1973).

The word "and" is ordinarily a conjunction connecting words or phrases and expressing the idea that the latter is to be added to, or taken along with, the former. *Hailey v. County Board of School Trustees,* 21 Ill.App.2d 105, 157 N.E.2d 570, 574 (1959); *In re Rapid Film Service, Inc.,* 181 Neb. 1, 146 N.W.2d 563, 565 (1966). The word "also" means among other things "in addition," "in like manner," or "besides." *Carr v. District of Columbia,* 177 U.S.App. D.C. 432, 543 F.2d 917, 922 (1976); *Brady v. Nichols,* 308 S.W.2d 100 (Tex.Civ.App.1957).

■ Although punctuation is to be subordinated to the text, it is plainly a proper guide in the interpretation of statutes. *Taylor v. Town of Caribou,* 102 Me. 401, 405, 67 A. 2 (1907). A comma is generally used to indicate the separation of words, phrases, or clauses from others not closely connected in the structure of the sentence.

Taken as a whole, this linguistic and grammatical analysis indicates that the two parts of 13–A M.R.S.A. § 1213 are to be read separately, and the one distinguished from the other. The first half creates a general sanction against the doing of unauthorized business in Maine; the second provides for a simplified service of process in

---

2. Article I, Section 6–A.

those instances where the cause of action arises out of the corporation's business activity in Maine.

Without changing its meaning one whit, the statute could be rewritten as follows:

Every foreign corporation which does any business in this state without having been authorized to do business here thereby submits itself to the jurisdiction of Maine's courts. If, in addition, the cause of action arises out of the transaction of business in Maine, then the Secretary of State can be served with process on its behalf.

This construction of the statute is reinforced by an examination of the provision's legislative history. 13-A M.R.S.A. § 1213, was enacted in 1971 as part of the Maine Business Corporation Act. See 13-A M.R.S.A. § 101. Its predecessor, 13 M.R.S.A. § 591 (1964) derived from R.S.1954, c. 53, § 127 as amended, P.L.1955, c. 24, read:

Any foreign corporation which does business in this State without appointing an agent as required by this section shall be deemed to have appointed the Secretary of State, or his successor in office, to be his true and lawful attorney upon whom may be served all lawful processes in any action or proceeding against such corporation, arising as a result of such corporation doing business in this State and such service shall be of the same legal force and validity as if otherwise served on such corporation.

Under this earlier version the action had to arise "as a result of" business activities in Maine. *Berube v. White Plains Iron Works, Inc.,* 211 F.Supp. 457, 459 (D.Me.1962). This type of restrictive statute may have been prompted by the uncertainty of whether a suit against a foreign corporation unrelated to its activities in a state could pass constitutional muster, *International Shoe Co. v. Washington,* 326 U.S. 310, 318, 66 S.Ct. 154,

159, 90 L.Ed. 95, 103 (1945); *Annot.,* 94 L.Ed. 1167, 1181 (1949); *Developments in the Law—State Court Jurisdiction,* 73 Harv.L.Rev. 909, 930 (1960). This uncertainty was not finally resolved until *Perkins v. Benguet Consol. Mining Co.* answered it in the affirmative. 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

The significant expansion of the statute under 13-A M.R.S.A. § 1213 may well have been a response to the green light flashed by *Perkins.* Whatever the reason for this expansion, the material changes the Legislature made when it enacted 13-A M.R.S.A. § 1213 clearly show an intent to change the existing law. *Matheson v. City of Portland,* Me., 288 A.2d 476, 478 (1972); *In re Bangor & Aroostook R. R. Co.,* 159 Me. 86, 91, 188 A.2d 485 (1963).[3]

■ We conclude, therefore, that under 13-A M.R.S.A. § 1213 a foreign corporation which does business in this state can be sued on an action unrelated to its business activity in Maine.

A further question must now be addressed. Under the statute "[e]very foreign corporation which does any business in this state without having been authorized to *do business* in this state" is subject to the jurisdiction of our courts. We must determine whether the term "doing business" empowers a Maine court to exercise jurisdiction to the full extent permitted by the due process requirements of the State and Federal Constitutions.

The Legislature has taken a liberal view of personal jurisdiction.

Even before the enactment of our present "long-arm statute," 14 M.R.S.A. § 704–A, we observed: "[T]he Legislature intended to fashion a 'long-arm' statute of maximum permissible reach 'to the extent permitted by the due process clause.' " *Foye v. Con-*

---

**3.** Under the Defendant's interpretation 13-A M.R.S.A. § 1213 would be mere surplusage because our "long-arm statute," 14 M.R.S.A. § 704–A(2)(A), provides for jurisdiction for any cause of action "arising from . . . the transaction of any business within this State." It is not to be presumed that the Legislature

engaged in a useless and meaningless act when it enacted 13-A M.R.S.A. § 1213. *United States v. Blasius,* 397 F.2d 203, 209 (2d Cir. 1968); *Insurance Rating Bd. v. Commissioner of Insurance,* 356 Mass. 184, 248 N.E.2d 500, 504 (1969). *See also* J. Davies, *Legislative Law and Process* 258 (1975).

*solidated Baling Machine Co.*, Me., 229 A.2d 196, 197 (1967).[4]

In 1975 the Legislature enacted P.L.1975, c. 280, which amended the then § 704(1) and eliminated separate grounds for asserting jurisdiction; it simply provided for jurisdiction "on any basis not inconsistent with the Constitution of this State or of the United States." This was later repealed and replaced by our current statute, 14 M.R.S.A. § 704–A, which in unambiguous terms, applicable alike to corporations and humans, states:

(1) . . . This section, to insure maximum protection to citizens of this State, shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment.

The statute then sets forth eight different methods by which a defendant submits himself to the jurisdiction of the state's courts. Lest a defendant should escape the long arm of the State by slipping into the act's interstices, the Legislature added a broad catch-all provision to § 704–A(2):

I. Maintain any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States.

Commenting on this provision, R. Field, V. McKusick & L. Wroth, *Maine Civil Practice* § 4.10 at 36 (2d ed. 1970) (Supp.1977) observes: "[The statute's] effect is clearly to assert a broader claim to jurisdiction over nonresidents than is currently made in the great majority of states."

The broad and inclusive methods of acquiring jurisdiction which the Legislature has authoritatively and consistently declared to be the policy of this State under the "long-arm statute" provides valuable guidance in the proper interpretation of the "doing business" statute.

■ In sum, by adopting the "doing business" standard the Legislature manifested an intent that the term have an expansive and dynamic meaning constrained only by the dictate of the Federal Constitution.[5] Therefore, we interpret this standard to meet, but not exceed, the limits fixed by due process. The statute is constitutional on its face.

Our answers to the two questions thus far addressed find no due process requirement that either prohibits a Maine court from taking jurisdiction of the unique case before us or that compels a Maine court to do so. That the statute is constitutional on its face does not answer the question whether it may be constitutionally applied to confer jurisdiction in the case before us.

To resolve the ultimate issue on this appeal—the amenability of a non-consenting foreign corporation to a suit brought here by Maine residents upon a cause of action which arose out of state—requires the consideration of a third question. That question is whether, under the Due Process Clauses of the State and Federal Constitutions,[6] the Defendant's contacts with Maine are sufficient to support the assertion of jurisdiction over it, notwithstanding that the event giving rise to the action occurred out of state. We must look to the quality and nature of the Defendant's activities in our state.

---

4. The outer limits beyond which the Due Process Clause does not permit a state to go are suggested in *Hanson v. Denckla*, 357 U.S. 235, 250–54, 78 S.Ct. 1228, 1237–40, 2 L.Ed.2d 1283, 1295–98 (1958). *Cf. In Re Morgan Guaranty Trust Co.*, 28 N.Y.2d 155, 320 N.Y.S.2d 905, 912, 269 N.E.2d 571, 576 (1971).

   We interpret the Maine "doing business statute" to meet, but not exceed, those outer limits.

5. For other cases interpreting like statutes to reach similar results, *see Gkiafis v. Steamship Yiosonas*, 342 F.2d 546, 549 (4th Cir. 1965)

(Md. statute); *Walker v. General Features Corp.*, 319 F.2d 583, 585 (10th Cir. 1963) (Okl. statute); *Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co.*, 304 F.2d 915, 919 (1st Cir. 1962) (N.H. statute). *Compare Wenzel v. Morris Distributing Co.*, 439 Pa. 364, 266 A.2d 662, 665 (1970); *Litsinger Sign Co. v. American Sign Co.*, 11 Ohio St.2d 1, 227 N.E.2d 609, 613 (1967) (Md. statute).

6. Me.Const. art. I, Sect. 6–A; U.S.Const. amendments V and XIV.

■ When a claim is based upon an act committed outside the state that has no direct consequences within the state, the propriety of asserting jurisdiction depends on whether the corporation has carried on continuous and systematic, although unrelated, activities in the state. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485, 492 (1952); 4 C. Wright & A. Miller, *Federal Practice and Procedure* 261 (1969).

Whenever a plaintiff's claim does not arise out of something done in the forum state, other contacts between the defendant and the forum state must be "fairly extensive" before the burden of defending a suit there may be imposed upon it without "offending traditional notions of fair play and substantial justice." *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir. 1971); *Tillay v. Idaho Power Co.,* 425 F.Supp. 376, 379 (E.D.Wash.1976); F. James, *Civil Procedure* 640 (1965). The *Restatement (Second) of Conflict of Laws* § 47(2) (1971) states the rule in slightly different terms:

> A state has power to exercise judicial jurisdiction over a foreign corporation which does business in the state with respect to causes of action that do not arise from the business done in the state if this business is so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction.

Speaking through Chief Justice Stone, in 1945 the United States Supreme Court delineated the limits of due process:

> . . . [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102, 161 A.L.R. 1057 (1945).

■ Furthermore, in the case of the non-consenting foreign corporation, before that corporation can be subjected to jurisdiction it must have purposely availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958). *See Perkins v. Benguet Consol. Mining Co., supra; Whittaker Corp. v. United Aircraft Corp.,* 482 F.2d 1079, 1083 (1st Cir. 1973). Under the *Perkins* analysis, the question remains one of degree and not one of a kind; that analysis suggests only that greater contacts with the forum state are required to assert jurisdiction over a foreign corporation when the cause of action arose out of activities distinct from its activities in the forum state. D. Louisell & G. Hazard, *Pleading and Procedure* 303 (3rd ed. 1973).

Under this standard of "fair play and substantial justice" the court must consider a variety of factors including the nature and purpose of a defendant's contacts with the forum state, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum state in the controversy, and the convenience and fairness to both parties. *Fisher Governor Co. v. Superior Ct.,* 53 Cal.2d 222, 1 Cal.Rptr. 1, 3, 347 P.2d 1, 3 (1959) (Traynor, J.).[7]

■ In establishing a standard for deciding jurisdictional issues the phrase "fair play and substantial justice" does not distinguish between corporate and human defendants. Moreover, the phrase must be viewed in terms of whether it is fair and substantially just to *both* parties to have the case tried in the state where the plaintiff has chosen to bring the action. Professor Leflar has summarized the physical power requirements of this standard as follows:

> (a) [T]he cause of action must involve local elements which make it reasonable,

---

7. See also 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1069 (1969); 2 *Moore's Federal Practice* 4–237 (2d ed. 1978).

from the point of view of good judicial administration, that the case be tried at the selected forum; and

(b) the defendant must be sufficiently responsible for the existence of these local elements in the forum state to justify a conclusion that he has, by his voluntary conduct, subjected himself to jurisdiction to answer for their presence.

These principles remain flexible, Professor Leflar observes, as must all efforts to mark the dividing line between what the state's police power allows and what due process of law prohibits, but these principles do afford some specificity. R. Leflar, *American Conflicts Law* 60 (3d ed. 1977).

As we turn to the factual setting of the appeal before us, we recognize that the criteria by which we mark the boundary between activities which subject the non-consenting foreign corporation to suit in Maine, and those activities which do not, are neither mechanical nor quantitative. Instead, in each case, and on an *ad hoc* basis, we must weigh the quality and nature of those activities in relation to the fair and orderly administration of the law, which it was the purpose of the Due Process Clauses of the State and Federal Constitutions to insure. *See International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95, 104 (1945).

Each case involving this jurisdictional issue must stand or fall upon its own particular facts. *Brewster v. Boston Herald-Traveler Corp.,* 141 F.Supp. 760, 763 (D.Me.1956). Of necessity, this must involve some subjective value judgment by the courts. *Gullett v. Qantas Airways Ltd.,* 417 F.Supp. 490, 495 (M.D.Tenn.1975).

At the threshold we note that the appeal before us does not present the most compelling situation for application of the rule requiring more substantial contacts where the claim underlying the action arises out of an event occurring outside the forum state.

Frequently in these cases the plaintiff, as well as the defendant corporation, is a non-resident of the forum state. *See Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 747 (4th Cir. 1971); *Seymour v. Parke, Davis & Co.,* 423 F.2d 584, 585 (1st Cir. 1970). Some courts apply the same rule even when the plaintiff is a resident of the forum state. *See Tillay v. Idaho Power Co., supra.* We prefer, however, the view that the status of a plaintiff as a resident of the forum state at the time the cause of action arises significantly reinforces the rational nexus between the forum state and the claim presented for adjudication.[8]

In determining whether a defendant corporation has availed itself of the privilege of conducting activities within the state, and thus invoked the benefits and protections of its laws, some courts have developed checklists of relevant activities. *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir. 1971); *see General Foods Corp. v. Haines and Co., Inc.,* 458 F.Supp. 1167, 1170 (D.Del.1978). They inquire whether the foreign corporation has within the forum state an office, an agent, employees, telephone listing, mail address or bank accounts. We are not persuaded that the Due Process Clauses mandate so wooden an approach to the jurisdictional issue we are addressing as to require us to mechanically check off a given list of activities. *Buckeye Boiler Co. v. Superior Court,* 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (1969).

Patently, the Defendant in the case before us has regularly and actively solicited business in Maine. The circumstance that this Defendant does not have an office or agent in this state does not indicate a lack of purposeful conduct here. It indicates only that the volume of business available in our State does not warrant these traditional indicia of doing business. A registered office in Massachusetts, after all, is relatively close at hand.

---

8. *See Buckeye Boiler Co. v. Superior Court,* 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (1959) (forum state has an interest in opening its courts to residents seeking redress); *Developments in the Law—State Court Jurisdiction,* 73 Harv.L.Rev. 909, 931 (1960) (forum state unlikely to have an interest in an action in which its residents are not involved); von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1121 (1966).

The circumstance that the Defendant makes only 0.7% of its gross sales in Maine is not alone conclusive as to the systematic and continuous nature of its contacts here.[9] The more significant fact is that over the last five years the Defendant has made sales of approximately $80,000 a year in Maine. The additional facts that the Defendant actively solicits business through its advertising in many periodicals distributed in Maine, regularly sends sales literature to Maine schools and distributes its catalogs to certain Maine dealers demonstrate the purposeful nature of the Defendant's activities here.

In deciding the jurisdictional issue before us, the interests and fairness to both the Plaintiffs and Defendants must be considered and weighed. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977).

Although the Plaintiffs were living on a United States Air Force Base in England, this was but a temporary location for them. They were already Lewiston residents. To Lewiston they came home not long after the event occurred which gave rise to this action. In Lewiston they continue to reside. For all three Plaintiffs the effects of Mary Labbe's injury will largely be felt in this state. It appears that much of the evidence of permanent injury and damages is available here. Important witnesses are present here. Their long-term status as Maine residents weighs heavily in favor of the conclusion that as a matter of convenience and fairness to them the controversy should be resolved in the courts of this state. Indeed, the convenience of the forum may be more critical to them than to this Defendant, which carries on a multistate and multi-national business.

The burden on this Defendant to conduct this litigation in Maine does not appear to be appreciably greater than if the action had been commenced in Massachusetts, where, because of its registered office, the Defendant would have been amenable to suit.

Significantly, the Defendant made no attempt to demonstrate that it would be more inconvenienced by appearing in this state than in England, where allegedly it committed a tortious act, or in any of the eight states where, by maintaining its principal office or a registered office, it has submitted to jurisdiction. *See Connelly v. Uniroyal, Inc.*, 55 Ill.App.3d 530, 13 Ill.Dec. 162, 167, 370 N.E.2d 1189, 1194 (1977). The Defendant has not suggested that the product-liability law of Maine is dissimilar from that of the jurisdictions where it maintains these offices. We are also mindful of the circumstance that modern facilities for communication and transportation have lessened materially the inconvenience once encountered by a defendant forced to defend a lawsuit in another state. *Id.*

A manufacturer who sells gymnastic equipment for use by children of military personnel at a United States Air Force Base overseas must foresee that its wares will be used by residents of many states. Litigation of this nature in Maine should hardly come as a complete surprise to this Defendant.[10]

---

9. Equivalent percentages of gross sales have provided sufficiently substantial contacts to support personal jurisdiction in several cases: *H. K. Corp. v. Lauter*, 336 F.Supp. 79, 80 (N.D. Ga.1971) ($19,000 not an insubstantial sum); *General Leisure Products Corp. v. Gleason Corp.*, 331 F.Supp. 278, 281 (D.Neb.1971) (3 year total somewhat over $400,000 sufficient); *Corporate Development Specialists, Inc. v. Warren-Teed Pharmaceuticals, Inc.*, 102 N.J. Super. 143, 245 A.2d 517, 519 (1968) (gross sales in New Jersey about $90,000 to $101,000 annually, 1.4% of total gross sales). Although in the first two cases the claim arose in the forum state, these decisions, nevertheless, illustrate the sales volumes encountered in other jurisdictions and found to be sufficient to support jurisdiction upon the consideration of all relevant factors. *See also Buckeye Boiler Co. v. Superior Court, supra* (annual gross sales in California ranged from $25,000 to $35,000).

10. The Alabama court has suggested that any hardship to a foreign manufacturer in defending a products liability action in the plaintiff's state was to be assumed by the manufacturer as an attribute of foreign trade. *Mann v. Frank Hrubetz & Co., Inc.*, Ala., 361 So.2d 1021 (1978).

573

Furthermore, in most instances it is less unfair to require a non-resident defendant to try a case in a state in which he has voluntarily chosen to engage in business than to require a plaintiff to travel out of state and try his case in a jurisdiction which has no nexus whatsoever with the event which gave rise to the action.

In weighing the fairness to the parties themselves we do not overlook that which Mr. Justice Black termed the "manifest interest" of the state in providing a forum for its residents to seek effective redress. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957).

In sum, we weigh the additional expense and the inconvenience these Plaintiffs would suffer were a Maine forum denied them against the likely inconvenience to the Defendant corporation of defending this action in Maine. We consider the continuous and systematic nature of the Defendant corporation's activities in this State. We are mindful of our State's manifest interest in providing a forum for Maine residents. We conclude that there is an adequate basis for the Superior Court to assert jurisdiction over the Defendant in this action to enforce such liability as it may have incurred to the Plaintiffs by reason of the event which occurred in England.[11]

The conclusion that the Defendant corporation is amenable to this suit in Maine comports with our traditional concept of fair play and substantial justice. The result is reasonable in view of the Defendant corporation's extensive activities in Maine. The requirements of the Due Process Clauses are satisfied.

11. A like result was reached in *Gullett v. Qantas Airways, Ltd.*, 417 F.Supp. 490, 497 (M.D. Tenn.1975) where "under the totality of the circumstances" the defendant Australian airline was found to have sufficient contacts with Tennessee that it would not offend the traditional notions of fair play and substantial justice to subject the airline to jurisdiction there in an action arising out of a tort allegedly committed in the Southwest Pacific.

Also in accord, and even more similar on its facts, is *Kircos v. Goodyear Tire & Rubber Co.*, 70 Mich.App. 612, 247 N.W.2d 316, 317 (1976)

The entry, therefore, is:

Appeal sustained.

Order of dismissal vacated.

Remanded for further proceedings consistent with the opinion herein.

McKUSICK, C. J., and DELAHANTY, J., did not sit.

where in a *per curiam* opinion a non-consenting Illinois corporation which advertised, solicited sales and maintained dealers in Michigan was found to have such continuous and systematic contacts with Michigan as to permit the courts there to assert jurisdiction in an action arising out of a tort allegedly committed in Wisconsin.

*See also Budde v. Kentron Hawaii, Ltd.*, 565 F.2d 1145, 1149 (10th Cir. 1977); *Hart v. McCollum*, 249 Pa.Super. 267, 376 A.2d 644, 647 (1977); and *Walsh v. National Seating Co., Inc.*, 411 F.Supp. 564, 572 (D.Mass.1976).