Larry HARRIMAN et al.

v.

DEMOULAS SUPERMARKETS, INC.

Supreme Judicial Court of Maine.

Argued Nov. 5, 1986.

Decided Dec. 5, 1986.

Dionne & Crotteau, Paul R. Dionne (orally), Lewiston, for plaintiff.

Hunt, Thompson & Bowie, James M. Bowie (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

McKUSICK, Chief Justice.

In this action brought in the Superior Court (Androscoggin County) Larry Harriman and his wife, residents of Auburn, Maine, sued Demoulas Supermarkets, Inc., a Massachusetts corporation that operates grocery stores only in Massachusetts and New Hampshire, seeking damages for personal injuries suffered by Mr. Harriman while engaged in delivering baked goods for his Maine employer to a Demoulas warehouse in Massachusetts. The single issue before the Superior Court, which dismissed the action for want of personal jurisdiction over Demoulas, was, as it is here on appeal, whether in the factual circumstances here presented the Maine Superior Court may take jurisdiction in this action, consistently with the due process restrictions of the United States Constitution. On appeal we answer that question in the affirmative, and we therefore vacate the Superior Court's dismissal of the action.

I.

Plaintiff Larry Harriman was employed as a tractor-trailer operator by F.R. Lepage, Inc., a Maine corporation operating a bakery located in Auburn. On August 26,

1979, in the course of his employment with Lepage, Mr. Harriman delivered baked goods to the Tewksbury, Massachusetts, warehouse of defendant Demoulas. As he was unloading baked goods from his truck, Mr. Harriman slipped and fell on Demoulas's loading platform. Mr. Harriman sustained severe injuries to his back that have required extensive medical treatment and have prevented his return to work. Mr. Harriman has received all his medical treatment in Lewiston, Maine.

Demoulas operates a chain of 35 supermarkets in New Hampshire and Massachusetts, for which it purchases supplies from several Maine companies, including Lepage. Demoulas has conducted business with Lepage continuously for twelve years under an oral agreement. Pursuant to that agreement Lepage delivers baked goods to 34 Demoulas stores five times a week and in payment receives weekly checks mailed by Demoulas from Massachusetts to Lepage's Auburn, Maine, office. Also, at Demoulas's direction Lepage uses Demoulas's private labels, "Market Basket" and "Farm Valley," to package a portion of the Lepage baked goods that Demoulas orders. Demoulas's annual gross purchases of Lepage baked goods, under Lepage's own label and under Demoulas's private labels, exceed half a million dollars. Under a similar agreement with Harris Baking Company, another bakery located in Maine, Demoulas purchases in excess of $100,000 of baked goods a year. Those two Maine bakeries supply about 40% of the baked goods that Demoulas sells at retail. Representatives of Lepage and Harris conduct business with representatives of Demoulas on a weekly basis in person at Demoulas's main office in Massachusetts, as well as by telephone and mail.

Demoulas has developed a market in southern Maine for the sale of its goods to Maine residents from its New Hampshire stores close to the Maine line. Demoulas advertises in six Massachusetts and New Hampshire newspapers that have circulations in Maine. It also advertises in the York County Coast Star published in Kennebunk, Maine, and on four radio stations whose signals reach Maine. Demoulas attracts from Maine 10% to 20% of the customers patronizing its Dover, New Hampshire, store, and about half of the customers at its Portsmouth store.

## II.

■ Under the Maine long arm statute, 14 M.R.S.A. § 704–A (1980),[1] the jurisdictional reach of Maine courts is coextensive with the permissible exercise of personal jurisdiction under the due process clause of the federal constitution. *See Tyson v. Whitaker & Son,* 407 A.2d 1, 3 (Me.1979); *Labbe v. Nissen Corp.,* 404 A.2d 564, 569 (Me.1979). To decide that due process permits Maine's assertion of personal jurisdiction over Demoulas, we must affirmatively answer three questions:

(1) does the forum state have a legitimate interest in the subject matter of the action; (2) should the defendant by his conduct reasonably have anticipated litigation in the forum state; and (3) would the exercise of jurisdiction comport with "traditional notions of fair play and substantial justice"?

*Foreside Common Development Corp. v. Bleisch,* 463 A.2d 767, 769 (Me.1983).

First, Maine does have a legitimate interest in this litigation. Maine has an interest in providing the Harrimans, Maine citizens, a means of redress against nonresidents. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528, 541 (1985); *Labbe v. Nissen Corp.,* 404 A.2d at 573; 14 M.R.S.A. § 704–A(1) ("declaration of purpose" for Maine's long arm statute). Maine has an interest in this liti-

---

**1.** 14 M.R.S.A. § 704–A provides in pertinent part:

    2. Causes of action. Any person, whether or not a citizen or resident of this State, who in person or through an agent ...

    .   .   .   .   .

    I. Maintain[s] any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States.

gation because of its concern for the safety of Maine workers engaged in activities in the course of trade that is essential to Maine's economy. Finally, Maine has an interest in this litigation because all of Mr. Harriman's medical treatment took place in Lewiston; thus, all of his medical witnesses and medical creditors are located in Maine. The effects of his injury are felt in Maine. *Labbe v. Nissen Corp.*, 404 A.2d at 572.

Second, Demoulas should reasonably have anticipated litigation in Maine because it purposefully and continuously directed both purchasing and sales activities at Maine businesses and residents. For a corporation to be subject to the forum State's jurisdiction, due process demands that the corporation have sufficient contacts with that State to "make it reasonable ... to require the corporation to defend the particular suit which is brought there." *International Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). To meet that reasonableness test the defendant's contacts with the forum State must be more than merely "random," "fortuitous," or "attenuated," *Keeton v. Hustler Magazine*, 465 U.S. 770, 773–74, 104 S.Ct. 1473, 1477–78, 79 L.Ed.2d 790 (1984), and must not result solely from the "unilateral activity of another party," *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1874, 80 L.Ed.2d 404 (1983). The defendant must not be unfairly surprised by being haled into court in that jurisdiction.[2] *See Burger King Corp. v. Rudzewicz*, 471 U.S. at 471–74, 105 S.Ct. at 2181–83, 85 L.Ed.2d at 540–42. Whether the required minimum contacts are found

> "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State,

thus invoking the benefits and protections of its laws."

*Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). When a defendant "purposefully directs his activities at residents of a forum" by "deliberately engaging in significant activities" in that forum or by "creating continuing obligations between himself and residents" of the forum, that requirement is met. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 473–75, 105 S.Ct. at 2182–84, 85 L.Ed.2d 541–43.

Demoulas's conduct in entering into and maintaining its long-standing contractual relationships for the purchase of grocery products from Lepage and other Maine businesses provided sufficient basis upon which to assert jurisdiction. The United States Supreme Court has stated in *Burger King* that "with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." 85 L.Ed.2d at 541 (citations omitted). Demoulas's purchase of goods from Lepage was not simply an isolated event such as that involved in *Architectural Woodcraft Co. v. Read*, 464 A.2d 210 (Me.1983) (court denied jurisdiction over a California purchaser of a single staircase handcrafted by a Maine company). The twelve-year history of the oral agreement and continuous business relationship and the substantial volume of business transacted every week between Lepage and Demoulas support assertion of jurisdiction in Lepage's home state. The ongoing business relationship between Demoulas and Lepage was not the result of unilateral action by Lepage; presumably both parties to the agreement made demands and accommodations over time as great, severing its connection with the State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

---

**2.** A defendant who can foresee being haled into court in a particular forum has the opportunity to "act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too

their needs changed. In particular, the fact that Demoulas directed three Maine companies to attach its private labels to their goods demonstrates purposeful involvement by Demoulas in this State. By causing Lepage to label baked goods in Maine with Demoulas's "Farm Valley" and "Market Basket" labels, Demoulas implicitly undertook responsibility for the quality of the manufacture of those goods. Demoulas thus gained the right to exercise some control over production of the goods labeled with its private labels in Maine. *See Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079, 1084 (1st Cir.1973) (Massachusetts federal district court had personal jurisdiction over nonresident purchaser who monitored performance of resident manufacturer). Demoulas entered into its relationships with Maine suppliers for profit. By continuously using Maine bakeries instead of their Massachusetts and New Hampshire competitors for over $600,000 worth of goods per year and 40% of its baked goods requirements, Demoulas invoked the benefits and protections of Maine laws regarding the manufacture and the transport of those goods. Demoulas's purchasing activity directed at Maine suppliers was purposeful and sustained, not "random," "fortuitous," or "attenuated."

Likewise, Demoulas's sales promotion activities directed at Maine customers were purposeful, substantial, and successful, not "random," "fortuitous," or "attenuated." Although its Portsmouth store happens to be situated on the New Hampshire side of the state line, the market population served by that store is about equally divided between Maine and New Hampshire. At its Dover supermarket Demoulas through advertising and promotions attracts up to a fifth of its customers from Maine. By advertising in at least one Maine newspaper and on at least four radio stations serving Maine listeners, Demoulas induces Maine customers to do their grocery shopping at stores across the New Hampshire border. By conducting these sales activities, Demoulas has invoked the benefits and protections of Maine law; therefore, in respect to its sales as well as its purchases,

"defendant's conduct and connection with the forum State are such that [it] should have reasonably anticipate[d] being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ Third, to subject Demoulas to the jurisdiction of Maine courts comports with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160. The determination of fairness depends upon the facts of each case. *Tyson v. Whitaker & Son*, 407 A.2d at 6. For that determination, the court considers "a variety of factors including the nature and purpose of defendant's contacts with the forum state, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum state in the controversy, and the convenience and fairness to both parties." *Labbe v. Nissen Corp.*, 404 A.2d at 570. As we have discussed above, the nature, purpose, and number of contacts and the interest of the forum state in the controversy all support jurisdiction. The connection between Demoulas's contacts with Maine and the Harrimans' cause of action also supports assertion of jurisdiction by Maine. If a nonresident corporation's activities are wide-ranging, continuous, and systematic, it may be subject to jurisdiction in a State on a cause of action unrelated to those activities. *See Perkins v. Benguet Mining Co.*, 342 U.S. 437, 447–48, 72 S.Ct. 413, 419, 96 L.Ed. 485 (1952); *International Shoe*, 326 U.S. at 318, 66 S.Ct. at 159. Less extensive activity is required where the cause of action arises out of or in connection with the defendant's forum-related activity. *See Keeton v. Hustler Magazine*, 465 U.S. at 780, 104 S.Ct. at 1485. The case at bar involves the latter situation. The accident giving rise to the present cause of action occurred while Mr. Harriman was delivering Maine goods to Demoulas's premises in performance of his Maine employer's contractual obligations to Demoulas.

Furthermore, Demoulas has failed to convince us that considerations of "the fairness and convenience to both parties" render jurisdiction unreasonable.

[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Burger King Corp. v. Rudzewicz,* 471 U.S. at 477, 105 S.Ct. at 2185, 85 L.Ed.2d at 544. Demoulas made no attempt to demonstrate that it would be significantly more inconvenienced by being required to appear and defend in Maine rather than in Massachusetts. *See Labbe v. Nissen Corp.,* 404 A.2d at 572. The relative economic burdens favor the Harrimans' choice of forum. The Harrimans' medical witnesses are all in Maine, and it would be expensive to transport them to Massachusetts or to obtain their testimony there through alternative means. Demoulas is better able to absorb the cost of litigation into its costs of doing business. *See Tyson v. Whitaker & Son,* 407 A.2d at 6.

By establishing extensive, long-term, business relationships with Maine suppliers, some of whom at its direction use the Demoulas private labels, and by advertising in Maine to attract Maine customers, Demoulas invoked the benefits and protections of Maine law. These purposeful activities provided Demoulas reasonable notice of the probability of being haled into court in Maine. Maine's assertion of jurisdiction to provide redress for its citizens in these circumstances does not offend due process.

The entry is:

Judgment of dismissal vacated.

All concurring.