## SACO RIVER TELEGRAPH & TELEPHONE COMPANY and Saco River Cellular, Inc., Plaintiffs,

v.

## SHOOSHAN & JACKSON, INC., Charles L. Jackson, and National Economic Research Associates, Inc., Defendants.

### Civ. No. 92–72–P–H.

United States District Court, D. Maine.

Aug. 3, 1993.

---

Harold J. Friedman, Friedman & Babcock, John G. Connor, Portland, ME, Bruce B. Parker, Michael B. Keating, Foley, Hoag & Eliot, Boston, MA, for plaintiffs.

Christopher L. Mann, Marshall A. Stern, Stern & Goldsmith, Bangor, ME, Steven R. Kuney, Mark A. Grannis, Williams & Connolly, Washington, DC, for Shooshan & Jackson, Inc., Charles L. Jackson.

Mark G. Lavoie, David L. Herzer, Jr., Norman Hanson & DeTroy, Portland, ME, for National Economic Research Associates, Inc.

## ORDER ON DEFENDANT NERA'S MOTION TO DISMISS

HORNBY, District Judge.

■ NERA has moved to dismiss this action against it for lack of personal jurisdiction. The plaintiffs concede that their claim does not grow out of NERA's contacts with Maine (traditional specific jurisdiction). They assert instead that jurisdiction can be based on (1) NERA's general business activity within the state (general jurisdiction), or (2) NERA's predecessor's specific contacts with Maine (successor specific jurisdiction). Maine's long arm statute reaches as far as the federal Constitution permits, *see Christiansen v. Smith,* 598 A.2d 176, 177 (Me. 1991), and, therefore, I need only address the constitutional issues. Concluding that the plaintiffs are unable to make out even a *prima facie* case under *Boit v. Gar-Tec Prods., Inc.,* 967 F.2d 671, 675–76 (1st Cir. 1992), I GRANT the motion to dismiss.

### GENERAL JURISDICTION

■ Where personal jurisdiction is premised on general jurisdiction, *see Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8–9, 104 S.Ct. 1868, 1872 n. 8–9, 80 L.Ed.2d 404 (1984), the outcome "depends largely on whether a corporate party carried on 'continuous and systematic' activities within the forum sufficient to justify requiring it to answer there to a claim unrelated to its in-forum presence." *Sandstrom v. Chemlawn Corp.,* 904 F.2d 83, 88 (1st Cir.1990) (quoting *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952)); *Accord Labbe v. Nissen Corp.,* 404 A.2d 564, 570 (Me.1979). The continuous and systematic contacts sup-

582

porting jurisdiction must be substantial. *Perkins,* 342 U.S. at 447, 72 S.Ct. at 419. *See also Labbe,* 404 A.2d at 570 (contacts must be "fairly extensive").

■ NERA is a California Corporation with its headquarters in New York. It maintains a branch office in Massachusetts, but none in Maine. It is not registered with Maine's Secretary of State. Over the last ten years NERA has served seven Maine clients by preparing studies, reports, and written testimony. Since 1991, NERA has earned a total of $10,167.72 from those clients in business arrangements consisting of separate, short term contracts for individual projects. Although NERA personnel occasionally travel to Maine in conjunction with a particular project, NERA maintains no instate personnel and the work on any given project is performed primarily at NERA's out-of-state offices. NERA directs no advertising to magazines, radio stations, or television stations in Maine. NERA's mailing list for sending speeches, articles, and working papers to clients and prospective clients nationwide, however, includes actual and prospective Maine clients. NERA's staff directory states that one of its officers has testified before the Maine Public Utilities Commission. NERA's brochure includes six Maine entities among its several hundred representative clients.

These contacts with Maine are not sufficient to sustain general jurisdiction. Given the absence of any directed advertising (apart from a nationwide mailing list) or any permanent NERA presence in Maine, representation of seven different clients on discrete short term projects over a decade does not amount to continuous or systematic business activity and earning approximately $10,000 from Maine clients since 1991 does not constitute substantial contact. These findings are consistent with pertinent precedent. In *Labbe,* the court's jurisdiction was based on the defendant's $80,000 per year business in Maine (over five years), along with the defendant's active advertising campaign in Maine. *Id.* at 572. In *Harriman v. DeMoulas Supermarkets, Inc.,* 518 A.2d 1035, 1037

(Me.1986), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987), jurisdiction was based on a twelve-year history of doing business with Maine clients (during which a substantial volume of business was transacted every week), partial control over the manufacture of products in Maine, and substantial sales promotion activities in the state. NERA's contacts come nowhere near these levels.[1] Accordingly, this court has no general personal jurisdiction over NERA.

### SUCCESSOR SPECIFIC JURISDICTION

■ The plaintiffs argue that if NERA's contacts with Maine do not support general jurisdiction, specific personal jurisdiction arises from the actionable conduct of Shooshan & Jackson, Inc. ("S & J"), its "predecessor." I have previously determined that this court has specific personal jurisdiction over S & J.

The plaintiffs argue that I should apply Maine law on successor liability; that under Maine law, NERA has successor liability for what S & J did; and, as a result, the caselaw grants jurisdiction over the successor, NERA, because it exists over the predecessor, S & J. *See, e.g., Williams v. Bowman Livestock Equip. Co.,* 927 F.2d 1128, 1132 (10th Cir.1991) ("[a] corporation's contacts with a forum may be imputed to its successor if forum law would hold the successor liable for the actions of its predecessor"). The record here, however, demonstrates no merger between the two corporations and no agreement to assume debts and obligations, but instead a purchase of S & J's assets by NERA. Despite the general rule against successor liability under such circumstances, *see Director of Bureau of Labor Standards v. Diamond Brands, Inc.,* 588 A.2d 734, 736 (Me.1991), the plaintiffs argue that NERA can be held liable for S & J's actions, based upon either finding a *de facto* merger or applying the continuity of enterprise exception. *See Atlas Tool Co., Inc. v. Commissioner of Internal Revenue,* 614 F.2d 860 (3rd Cir.), *cert. denied sub nom. Schaffan v. Commissioner of Internal Revenue,* 449 U.S. 836, 101 S.Ct. 110, 66 L.Ed.2d 43 (1980)

1. More analogous are the cases collected in *Sandstrom,* 904 F.2d at 89, where the courts

found they had no general personal jurisdiction over the defendants.

(applying federal law); *Cyr v. B. Offen & Co., Inc.,* 501 F.2d 1145 (1st Cir.1974) (applying New Hampshire law). Unfortunately for the plaintiffs, Maine law does not appear to recognize these exceptions to the common law rule. "[A]bsent a contrary agreement by the parties, or an explicit statutory provision in derogation of the established common law rule, a corporation that purchases the assets of another corporation in a *bona fide* arm's-length transaction is not liable for the debts or liabilities of the transferor corporation." *Diamond Brands, Inc.,* 588 A.2d at 736.[2] In the absence of successor liability under Maine law, S & J's contacts cannot be ascribed to NERA, and thus cannot constitute the basis for exercising specific personal jurisdiction over NERA.

Accordingly, NERA's motion to dismiss for lack of personal jurisdiction is GRANTED.

SO ORDERED.

2. As in *Diamond Brands, Inc.,* the plaintiffs generate no issue regarding the *bona fide* nature of the transaction between the two corporations. *See id.* at 736 n. 5.