**Deidre CALURI**

v.

**Neil RYPKEMA d/b/a Laurel Hill Trucking Company.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 30, 1990.

Decided Feb. 27, 1990.

Perry O'Brian, Vandermeulen, Goldman, Allen & O'Brian, Bangor, for plaintiff.

Brett D. Baber, Philip D. Buckley, Rudman & Winchell, Bangor, for defendant.

Before WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

WATHEN, Justice.

Plaintiff Deidre Caluri appeals from an order of the Superior Court (Penobscot

County, *Beaulieu, J.*) dismissing her complaint pursuant to M.R.Civ.P. 12(b)(2) for lack of personal jurisdiction over defendant, Neil Rypkema, d/b/a Laurel Hill Trucking Company. On appeal, plaintiff argues that by his conduct defendant should reasonably have anticipated litigation in Maine and that therefore jurisdiction over defendant comports with the due process clause of the United States Constitution. We agree with plaintiff's contention and vacate the Superior Court's order.

By her complaint and affidavit, plaintiff has alleged the following facts: Plaintiff is a resident of Stetson, Maine. In February, 1985, she contacted defendant by phone and discussed with him the possibility of becoming the Maine representative for Laurel Hill Trucking Company. Plaintiff was to contact various businesses in Maine for the purpose of securing contracts for defendant. Her commission was to be based on a percentage of the total amount hauled under each contract.

On March 4, plaintiff contacted the Ames Department Store in Newport, Maine. She was referred to George Bolduc, Assistant Traffic Manager at Ames' regional headquarters in Rocky Hill, Connecticut. At Bolduc's request, and with defendant's approval, plaintiff mailed a letter to Bolduc setting forth information on rates and insurance. On April 23, both plaintiff, from Maine, and defendant, from New Jersey, travelled to Rocky Hill and met with Bolduc. On May 28, defendant began hauling for Ames Department Stores. None of the hauling took place in Maine.

From April, 1985, to December, 1986, plaintiff received periodic commissions on the Ames account. In August, 1985, defendant telephoned plaintiff regarding the Ames account because business was unusually slow. Plaintiff contacted Bolduc and soon after business increased dramatically. In addition to the Ames account, plaintiff contacted numerous other businesses in Maine in the hope of securing other contracts but was ultimately unsuccessful.

Defendant made no payments after December 31, 1986. Plaintiff's complaint states a cause of action for breach of contract. After a non-testimonial hearing, the Superior Court granted defendant's motion to dismiss for lack of personal jurisdiction. Plaintiff now appeals.

■ The jurisdictional reach of Maine's Long–Arm statute is coextensive with the due process clause of the United States Constitution. *See* 14 M.R.S.A. § 704–A (1980).[1] In order to satisfy the requirements of due process, the Court must affirmatively answer three questions:

(1) does the forum state have a legitimate interest in the subject matter of the action; (2) should the defendant by his conduct reasonably have anticipated litigation in the forum state; and (3) would the exercise of jurisdiction comport with "traditional notions of fair play and substantial justice"?

*Harriman v. Demoulas Supermarkets, Inc.,* 518 A.2d 1035, 1036 (Me.1986); *Foreside Common Development Corp. v. Bleisch,* 463 A.2d 767, 769 (Me.1983). Plaintiff bears the burden of establishing that jurisdiction is proper. *Kowalski v. Doherty, Wallace, Pillsbury & Murphy,* 787 F.2d 7, 8 (1st Cir.1986).[2] Such showing "must be based on specific facts set forth in the record," and the record is to be

---

1. § 704–A provides in relevant part:

   2. *Causes of action.* Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section

   . . .

   *I.* Maintain any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States.

2. This is true, however, only for the first two prongs of the test. Once plaintiff has established that Maine has a legitimate interest in the controversy and that the requisite minimum contracts exist, the burden then shifts to defendant to show that jurisdiction does *not* comport with "traditional notions of fair play and substantial justice." *Harriman,* 518 A.2d at 1039, quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

"construed in plaintiff's favor." *Id.* at 8–9.[3]

Plaintiff argues that the motion justice erred by ruling that she failed to satisfy the second prong of the test, namely, that by his conduct defendant should "reasonably have anticipated litigation in [Maine]." *Harriman*, 518 A.2d at 1036.[4] Specifically, plaintiff contends that the court's reliance on *Cives Corp. v. American Electric Power Co., Inc.*, 550 F.Supp. 1155 (D.Me.1982), and *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079 (1st Cir.1973), was misplaced. In plaintiff's view, a recent United States Supreme Court decision, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), supports Maine's jurisdiction over defendant in this case.

Our analysis in *Harriman* incorporates *Burger King* and the other governing opinions of the United States Supreme Court. In *Harriman*, we held that a Massachusetts supermarket chain, Demoulas Supermarkets, Inc., could be sued in Maine for the personal injuries to an employee of F.R. LePage, Inc., a Maine bakery with which it did business, "because it purposefully and continuously directed both purchasing and sales activities at Maine businesses and residents." *Harriman*, 518 A.2d at 1037. With respect to its purchasing activities, we focused on a twelve-year oral agreement that resulted in LePage, along with another Maine bakery, fulfilling 40% of De-

moulas' baked goods requirements annually, as well as the control Demoulas gained over production by directing LePage to attach its private labels on a portion of the baked goods that Demoulas ordered. *Id.* at 1037–38. With respect to its sales activities, we noted that Demoulas sought to and did infiltrate the southern Maine market respecting its New Hampshire stores by advertising in newspapers and on radio. *Id.* at 1038.

In analyzing whether Demoulas should reasonably have anticipated litigation in Maine, our opinion in *Harriman* relies on *Burger King*, stating that due process is satisfied when a defendant " 'purposefully directs his activities at residents of a forum' ... by 'creating continuing obligations between himself and residents' of the forum...." *Harriman*, 518 A.2d at 1037, quoting *Burger King*, 471 U.S. at 473–75, 105 S.Ct. at 2182–84. Applying this standard to the facts of this case, we conclude that plaintiff has established the requisite minimum contacts to support personal jurisdiction over defendant. First, defendant's obligations to plaintiff respecting the Ames account were of a continuous nature. Second, plaintiff has made a prima facie showing that a general agency relationship existed between herself and defendant whereby defendant attempted to infiltrate the Maine market for trucking services.[5] *See, e.g.,*

---

**3.** While we have never ruled on the issue, the United States Court of Appeals for the First Circuit has held that "[w]here there has been no evidentiary hearing and the court proceeds upon written submissions, [the] plaintiff 'need only make a prima facie showing that jurisdiction exists....' " *Kowalski*, 787 F.2d at 8 (citations omitted). Accordingly, "[p]laintiff's written allegations of jurisdictional facts [should be] construed in [her] favor." *Id.* at 9.

**4.** Defendant concedes that the Superior Court correctly ruled that plaintiff sustained her burden on the first prong of the test.

**5.** In *Burger King*, the Court spoke at some length respecting the extent to which a contract can constitute a "contact" for purposes of due process analysis:

If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum con-

tacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests, or on 'conceptualistic ... theories of the place of contracting or of performance.' Instead, we have emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Burger King*, 471 U.S. at 478–79, 105 S.Ct. at 2185–86 (emphasis in original) (citations omitted).

*Libby v. Concord General Mut. Ins. Co.,* 452 A.2d 979, 981 (Me.1982) ("Agency is the fiduciary relationship 'which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' "); *Restatement (Second) of Agency* §§ 1, 3 & 7 (1958). Finally, as in *Harriman,* defendant exercised control over plaintiff's performance. This was demonstrated by defendant's authorization of plaintiff's letter to Bolduc regarding rates and insurance, as well as defendant's phone call when the Ames account slowed.

The third prong of the test is whether subjecting defendant to the jurisdiction of Maine courts comports with "traditional notions of fair play and substantial justice." In deciding this question in *Harriman,* we again relied on *Burger King:*

> [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Harriman,* 518 A.2d at 1039, quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184. Defendant's affidavit reveals no attempt to demonstrate that litigation in Maine would be " 'so gravely difficult and inconvenient' " that he would be at a " 'severe disadvantage in comparison to [plaintiff].' " *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184 (citations omitted). Moreover, as demonstrated above, the nature and purpose of defendant's contacts were not so " 'random, fortuitous, or attenuated' " that jurisdiction over defendant is unreasonable. *Harriman,* 518 A.2d at 1038. Finally, while the extent of defendant's contacts with Maine is small, "[l]ess extensive activity is required where the cause of action arises out of or in connection with the defendant's forum-related activity." *Id.* Because plaintiff's suit is on the contract, such is the case here.

The entry is:

Order dismissing plaintiff's complaint vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.