## ELECTRONIC MEDIA INTERNATIONAL

v.

## PIONEER COMMUNICATIONS OF AMERICA, INC.

Supreme Judicial Court of Maine.

Argued Jan. 2, 1991.

Decided Feb. 27, 1991.

Neal F. Pratt (orally), Bernstein, Shur, Sawyer & Nelson, Kennebunk, for plaintiff.

Ronald R. Coles, Robert E. Mongue (orally), Coles & Mongue, Kennebunk, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

BRODY, Justice.

Electronic Media International (EMI) appeals from an order of the Superior Court (York County, *Cole, J.*) dismissing its complaint against Pioneer Communications of America, Inc. (Pioneer), for lack of personal jurisdiction. EMI contends that the court erred in concluding that it had failed to establish sufficient contacts by Pioneer with Maine to show that Pioneer had purposefully availed itself of the benefits of conducting business here. We agree and vacate the order.

On March 1, 1989, EMI, a small Maine corporation with a place of business in Kennebunkport, contacted Pioneer to solicit price quotations for 500 to 5,000 units of a specific type of laserdisc. Following a number of oral and written communica-

tions between EMI and Pioneer's offices in Los Angeles and Detroit, Pioneer sent EMI a letter with the requested quotations. The letter specified a price of three dollars each for up to 1,000 discs and two dollars each for discs in excess of 1,000, with no "mastering" charge for producing them. Pioneer assured EMI on at least two occasions that it "could provide the discs according to the requested specifications and at the price ... quoted."

In May of 1989, EMI ordered twenty-five sample discs which Pioneer supplied at three dollars each for a total of seventy-five dollars. In June, satisfied with the samples that it had demonstrated to one of its customers, EMI ordered 1,000 more discs at three dollars each. During late June and July, however, after several telephone conversations between EMI and Pioneer's offices in Los Angeles, Detroit, and Upper Saddle River, New Jersey, it became doubtful that Pioneer would honor its initial price quotation. Finally, on July 27, 1989, Pioneer wrote to EMI withdrawing its earlier quotation and quoting a new price of seven dollars per disc plus a "mastering" charge of $1,500.

On January 16, 1990, EMI initiated this action against Pioneer for breach of contract and negligent misrepresentation. Pioneer responded by filing a motion to dismiss EMI's complaint pursuant to M.R. Civ.P. 12(b)(2) for lack of personal jurisdiction. After a nontestimonial hearing, the court made the following factual findings on the basis of the pleadings and affidavits of the parties:

> The defendant has no offices in Maine and its closest office to this jurisdiction is in New Jersey. The defendant's regional sales personnel for the New England area is located in Detroit, Michigan, and sales personnel have not been active in person in Maine. The defendant has no manufacturing, distribution or sales facilities in Maine and had not directed advertisements to be circulated in Maine.
>
> The plaintiff is a relatively small corporation that initiated contact with defendant first at its California office and later at its Detroit office. Correspon-

dence was through the mails and by telefax between the parties.

> In July, 1989, defendant obtained a dealer for Maine and its total sales from July, 1989 to February, 1990 was $6,200.00 for laserdiscs. Another division of the defendant had made sales to two cable t.v. customers in Maine of $18,100.00 during the same period.

The court subsequently granted Pioneer's motion on the ground that EMI had "failed to establish sufficient contacts by [Pioneer] with the State to have purposefully availed itself of the benefits of conducting activities within the State." The court rested its decision on the authority of *Architectural Woodcraft Co. v. Read*, 464 A.2d 210, 213 (Me.1983), in which we held that "the existence of a single contract with a resident plaintiff coupled with the use of interstate communications does not establish a basis for asserting jurisdiction over a nonresident defendant." The court's complete reliance on *Architectural Woodcraft* is inapposite. The facts in that case reveal only a single isolated purchase by an out-of-state buyer.

The jurisdictional reach of Maine's long-arm statute, 14 M.R.S.A. § 704–A(1) (1980), is limited only by the due process clause of the fourteenth amendment. *Harriman v. Demoulas Supermarkets, Inc.*, 518 A.2d 1035, 1036 (Me.1986). Due process in the exercise of jurisdiction over an out-of-state defendant requires the satisfaction of a three-prong test:

> (1) does the forum state have a legitimate interest in the subject matter of the action; (2) should the defendant by his conduct reasonably have anticipated litigation in the forum state; and (3) would the exercise of jurisdiction comport with "traditional notions of fair play and substantial justice"?

*Foreside Common Dev. Corp. v. Bleisch*, 463 A.2d 767, 769 (Me.1983). The burden of establishing that jurisdiction is proper under the first two prongs falls on the plaintiff; once the plaintiff has met that burden, it is up to the defendant to show that jurisdiction is *improper* under the

third prong. *Caluri v. Rypkema,* 570 A.2d 830, 831 n. 2 (Me.1990).

◼ Generally, the plaintiff's showing of jurisdiction must be based on specific facts incorporated in the record, which should be construed in favor of the plaintiff. *Id.* at 831–32. Where, as here, however, the hearing is nontestimonial and the court proceeds only upon the pleadings and affidavits of the parties, the plaintiff " 'need only make a prima facie showing that jurisdiction exists,' " and the plaintiff's written allegations of jurisdictional facts should be construed in its favor. *Id.* at 832 (quoting *Kowalski v. Doherty, Wallace, Pillsbury & Murphy,* 787 F.2d 7, 8 (1st Cir.1986).

◼ There is no question that EMI sustained its burden on the first prong of the test. Maine has a legitimate interest in the litigation. It has an interest in providing a means of redress against nonresidents who incur obligations to Maine citizens entitled to the state's protection. *Harriman v. Demoulas Supermarkets, Inc.,* 518 A.2d at 1036; *see also* 14 M.R.S.A. § 704–A(1) (declaration of purpose of long-arm statute). It also has an interest in regulating and/or sanctioning "parties who 'reach out beyond one state and create continuing relationships and obligations with [Maine] citizens' ... for the consequences of their activities." *Burger King v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citations omitted).

EMI argues that it carried its burden on the second prong as well. In *Harriman,* we discussed at length the minimum contacts required to satisfy due process under that prong. For a foreign corporation to be subject to a forum state's jurisdiction, "due process demands that the corporation have sufficient contacts with that State to 'make it reasonable ... to require the corporation to defend the particular suit which is brought there.' " *Harriman v. Demoulas Supermarkets, Inc.,* 518 A.2d at 1037 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The reasonableness test requires that "the defendant's contacts with the forum State ... be more than merely 'random,' 'fortuitous,' or 'attenuat-

ed.' " *Id.* (quoting *Keeton v. Hustler Magazine,* 465 U.S. 770, 773–74, 104 S.Ct. 1473, 1477–78, 79 L.Ed.2d 790 (1984)). Nor may the defendant's contacts "result solely from the 'unilateral activity of another party.' " *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984)). In other words, "[t]he defendant must not be *unfairly surprised* by being haled into court in that jurisdiction." *Id.* (emphasis added).

We explained in *Harriman* that, although the requisite minimum contacts " 'will vary with the quality and nature of the defendant's activity, ... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Id.* (quoting *Burger King v. Rudzewicz,* 471 U.S. at 474–75, 105 S.Ct. at 2183). "When a defendant 'purposefully directs his activities at residents of a forum' by 'deliberately engaging in significant activities' in that forum or by 'creating continuing obligations between himself and residents' of the forum, that requirement is met." *Id.* (quoting *Burger King v. Rudzewicz,* 471 U.S. at 472–76, 105 S.Ct. at 2181–84).

The extent to which a contract can constitute a "contact" for purposes of due process analysis was discussed at some length by the United States Supreme Court in *Burger King:*

> If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.... [A] "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining*

*whether the defendant purposefully established minimum contacts within the forum.*

*Burger King v. Rudzewicz,* 471 U.S. at 478–79, 105 S.Ct. at 2185 (emphasis added) (citations omitted), *quoted in Caluri v. Rypkema,* 570 A.2d at 832 n. 5.

██ Applying these standards to the facts of this case, we conclude that EMI met its burden on the second prong of the due process test. EMI alleged in its complaint and affidavit that Pioneer entered into a $3,000 contract with EMI, engaged in discussions and negotiations with EMI over a period of five months, sold and delivered a quantity of laserdiscs to EMI, made assurances to EMI that Pioneer would perform under the contract, knew or should have known that EMI was relying to its economic detriment upon Pioneer's price quotations, and offered to sell 1,000 laserdiscs to EMI for $7,000 plus a "mastering" charge of $1,500. Construed in EMI's favor, these written allegations compel the conclusion that Pioneer by its conduct reasonably should have anticipated litigation in Maine.

We find that Pioneer's authorization of a dealer for Maine in July of 1989, at the same time or on the heels of its dealings with EMI, is further indication of Pioneer's intentions to purposefully avail itself of the privilege of conducting business in Maine. Pioneer should not have been unfairly surprised in January of 1990 by EMI's suit.

██ Pioneer's pleadings and affidavit as they relate to the third prong fail to demonstrate that the exercise of jurisdiction would not comport with "traditional notions of fair play and substantial justice." Pioneer's affidavit does not show that litigation in Maine would be " 'so gravely difficult and inconvenient' " that it would be at a " 'severe disadvantage' " as compared to EMI. *Caluri v. Rypkema,* 570 A.2d at 833 (quoting *Burger King v. Rudzewicz,* 471 U.S. at 478, 105 S.Ct. at 2185). Although the extent of Pioneer's contacts with Maine is admittedly small, "[l]ess extensive activity is required where the cause of action arises out of or in connection with the defendant's forum-related activity."

*Harriman v. Demoulas Supermarkets, Inc.,* 518 A.2d at 1038. Finally, the relative economic burdens favor EMI over Pioneer, which is better able to absorb the expenses of litigation into its costs of doing business. *See id.* at 1039.

Accordingly, the court erred in granting Pioneer's motion to dismiss for lack of personal jurisdiction based on insufficient contacts.

The entry is:

Order dismissing EMI's complaint vacated.

All concurring.