**TOM BROWN & COMPANY, INC., Appellant,**

v.

**Miles E. FRANCIS, Appellee.**

**No. 91–CV–469.**

District of Columbia Court of Appeals.

Submitted April 28, 1992.
Decided May 12, 1992.

---

James W. Richmond, Jr., was on the brief, for appellant.

William L. Fallon, was on the brief, for appellee.

Before FERREN, TERRY and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Appellant contends that the trial judge erred by granting appellee's motion for summary judgment and thereby enforcing appellee's foreign default judgment against appellant. The default judgment had been obtained in a lawsuit filed in Maine. Appellant claims that the Maine court did not have *in personam* jurisdiction over it, thus rendering the judgment void and unenforceable. We consider the materials offered in opposition to summary judgment in the light most favorable to appellant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Even so, we hold that

Judge Wolf correctly granted judgment as a matter of law because, on the undisputed facts, the Maine court exercised jurisdiction over appellant in conformity with both constitutional and Maine statutory standards. We therefore affirm.[1] *See McCoy v. Quadrangle Dev. Corp.*, 470 A.2d 1256, 1258 (D.C.1983).

## I.

Appellant Tom Brown & Company, Inc. is an insurance brokerage and bonding agency organized and headquartered in the District of Columbia. Appellee Miles E. Francis is the owner of a construction company located and doing business in Maine. Sometime in June of 1987, in response to a request by Francis, Tom Brown agreed to provide surety bonding for Francis. The surety bonding was required to allow Francis to perform a construction project in Maine for the federal government. Tom Brown had provided a similar service for Francis in 1986. During their 1986 dealings, problems had arisen with the sureties provided. These problems were corrected through several letters and telephone conversations between the parties. For providing the 1986 surety bonds that were eventually accepted by the federal government, Francis paid Tom Brown $42,965.79 in fees. Tom Brown admits to having had one other business contact in Maine besides Francis.[2]

On the present occasion in 1987, Francis paid Tom Brown $6,996.00 in fees for the agreed-upon surety. However, for reasons that are disputed (and irrelevant to this appeal), Tom Brown proved unable to furnish the bonding. After a series of telephone calls and letters between the parties, Francis asked Tom Brown to return the $6,996.00. Tom Brown returned $2,199.00, the amount it had assertedly retained for services as broker/intermediary while passing on the rest to the parties who were to

---

1. Appellant concedes that if the Maine court properly exercised jurisdiction, the Superior Court was not in error in giving the Maine judgment full faith and credit.

2. The exact nature of this third Maine business contact is unclear. Francis claims that he was given Tom Brown's name by another construc-

tion company, H.J. Sockbeson, General Contractors, for whom Tom Brown had provided surety bonding on several occasions. Given the summary judgment posture of this appeal, however, the most we can say about the third Maine business contact is that it existed at one time.

be the actual sureties. Francis filed suit against Tom Brown in Maine seeking judgment in the amount of $4,797.00, the remainder of the surety fee paid Tom Brown.

Tom Brown received valid personal service of the Maine suit in the District of Columbia. When it failed to file an answer or to appear in the Maine suit, Francis requested a default judgment. Upon receiving notice of the request for default judgment, Tom Brown wrote the Maine court requesting further time in which to appear and file an answer. It did not contest jurisdiction. The Maine court entered an order allowing Tom Brown until March 1, 1989, to file an answer through an attorney. The company retained a Maine attorney and attempted to file an answer on March 10, 1989. The answer generally denied the allegations, but did not contest the Maine court's exercise of personal jurisdiction over Tom Brown. On March 15, five days after filing its answer, Tom Brown moved for permission to file the late answer. The Maine court denied the request and entered a default judgment in favor of Francis, stating: "[t]he Court normally allows a late answer under these circumstances, but the defendant has failed to show any evidence of a meritorious defense and, at best, has shown that he is entitled to indemnification from a third party."

Francis thereafter filed this suit in the District of Columbia Superior Court to enforce the Maine judgment. Tom Brown filed a motion to dismiss, raising for the first time the issue of the Maine court's exercise of *in personam* jurisdiction. After Judge Cushenberry denied the motion, Tom Brown filed an answer asserting substantive defenses.[3] Francis moved for summary judgment, which Judge Wolf granted after a hearing. The judge found that Tom Brown had been acting as an insurance agent or surety as defined by Maine statutes. He further found that Tom Brown had had sufficient contacts with Maine to allow the Maine court to exercise personal jurisdiction. The trial judge concluded:

[Tom Brown] delivered contracts of surety insurance in Maine "covering subjects resident, located, or to be performed in" Maine (in this case all three categories). Maine Insurance Code 24-A § 3101. It had done business of the same sort before with [Francis] and others in Maine.... Accordingly, the court concludes [Tom Brown] had done acts "by which [it] purposefully availed itself of the privilege of conducting activities within the forum State Maine, thus invoking the benefits and protections of its laws." *Hansen v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

This appeal followed.

## II.

■ In determining whether the Maine court's exercise of jurisdiction in this case is consistent both with Maine's long arm statute and with constitutional requirements of due process, we must reexamine the jurisdictional issue *de novo*. *Frank E. Basil, Inc. v. Guardino*, 424 A.2d 70, 74 (D.C.1980). In doing so, we apply Maine law. "While it is fundamental that the District of Columbia courts may inquire into the jurisdiction of a foreign court before enforcing its judgment[,] the jurisdictional standards to be applied are not our own but those of the foreign forum, if its standards comply with constitutional due process." *Id.* at 73 (internal brackets omitted) (citing *Varone v. Varone*, 296 A.2d 174, 177 (D.C.1972)); *see also Vickery v. Garretson*, 527 A.2d 293, 299 (D.C.1987).

## A.

■ Francis argues at the outset that Tom Brown waived its right to contest *in personam* jurisdiction when it appeared in the Maine litigation without asserting lack of jurisdiction. *See Architectural Woodcraft Co. v. Read*, 464 A.2d 210, 212 (Me. 1983) ("personal jurisdiction is normally waived as a defense if it is neither raised

---

**3.** Tom Brown also filed third party claims against the individual personal sureties involved in the 1987 transaction. These third party claims were eventually dismissed for failure of service of process.

by motion nor set forth in a responsive pleading. M.R.Civ.P. 12(h)(1).") There is substantial merit to this point. Tom Brown asked for an extension of time in the Maine suit, then retained counsel and attempted to file an answer to the complaint. Neither document contested personal jurisdiction. However, because the answer was tendered late and failed "to show any evidence of a meritorious defense," the Maine trial court refused to accept it and, by entering a default judgment, treated the case as though Tom Brown had never appeared in the litigation.[4] In the circumstances, we shall treat the Maine judgment similarly and go on to consider whether the state exercised valid *in personam* jurisdiction over Tom Brown.

### B.

■ Maine's long arm statute, 14 ME. REV.STAT.ANN. § 704–A (1980), is limited in reach only by the due process clause of the fourteenth amendment. *Electronic Media Int'l v. Pioneer Communications, Inc.,* 586 A.2d 1256, 1258 (Me.1991); *Tyson v. Whitaker & Son, Inc.,* 407 A.2d 1, 3 (Me. 1979). Maine employs a three prong test to determine whether the requirements of due process have been met:

(1) does the forum state have a legitimate interest in the subject matter of the action; (2) should the defendant by his conduct reasonably have anticipated litigation in the forum state; and (3) would the exercise of jurisdiction comport with "traditional notions of fair play and substantial justice?"

*Electronic Media,* 586 A.2d at 1258 (citing *Foreside Common Dev. Corp. v. Bleisch,* 463 A.2d 767, 769 (Me.1983)); *Caluri v. Rypkema,* 570 A.2d 830, 831 (Me.), *cert. denied,* —— U.S. ——, 111 S.Ct. 62, 112 L.Ed.2d 37 (1990). The burden of establishing proper jurisdiction under the first two prongs falls on the party claiming jurisdiction; under the third prong it is Tom Brown's burden to show that jurisdiction

was improper. *Electronic Media,* 586 A.2d at 1258–59.

■ Tom Brown concedes that Maine had a legitimate interest in the resolution of the dispute. This, however, does not adequately describe Maine's interest in the litigation. Maine's long arm statute makes specific reference to suits involving insurance transactions. The statute provides that "[c]ontracting to insure any person, property or risk located within this State at the time of contracting" subjects that person to suit in Maine. 14 ME.REV.STAT.ANN. § 704–A(2)(D). Thus, as was the case in *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), Maine has expressed a "manifest interest in providing effective means of redress for its residents" in suits involving insurance transactions. *Id.* at 223, 78 S.Ct. at 201. Francis has made the first required showing.

■ *McGee* is also instructive as to the second prong of Maine's test. In *McGee,* the defendant insurance company's sole contact with the state in which it was sued (California) had been the insurance policy held by the plaintiff. The defendant had never solicited or done business in California apart from that policy. *Id.* at 222, 78 S.Ct. at 200. Still the Court found enough minimum contacts in the transaction to satisfy due process. "The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State...." *Id.* at 223, 78 S.Ct. at 201. Combined with California's "manifest interest" in the protection afforded by insurance suits, these facts made it "sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [California]." *Id.*

In the case at hand, Tom Brown had significantly more contact with Maine than the insurer's relations with California in *McGee.* Tom Brown delivered a contract of surety in Maine, accepted substantial fees mailed from Maine, and provided sure-

---

**4.** Although it is of course possible for an attorney to enter an appearance in a case, only to have the court refuse to accept a document the attorney files, the default judgment here was tantamount to a conclusion that Tom Brown had never appeared to contest the complaint.

ties for a Maine resident. It had done so on at least one other prior occasion, possibly two.[5] And the prior dealing with Francis had involved repeated communications to resolve problems. *See Electronic Media*, 586 A.2d at 1260 ("discussions and negotiations" over significant period of time can establish "contact" for due process purposes). By these contacts, Tom Brown " 'purposefully avail[ed] itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws.' " *Id.* at 1259 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)).[6] Although in some instances "a single contract with a resident plaintiff coupled with the use of interstate communications" may not establish personal jurisdiction, *Architectural Woodcraft*, 464 A.2d at 213, when, as here, there has been more than one contract dealing with insurance, a subject in which Maine has a "manifest interest," Tom Brown should have reasonably anticipated that disputes arising under the contract would be litigated in Maine. Francis has thus met its burden under the second prong of the Maine test.

■ Finally, Tom Brown has failed to show why "traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), invalidate Maine's exercise of personal jurisdiction here. Reasonableness in this setting depends on several factors, including "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asabi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113,

107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *Mabon v. East Moline Metal Prods.*, 579 A.2d 255, 257 (Me.1990). Although Tom Brown has claimed that defending against suit in Maine is overly burdensome, its actions belie that claim. It was able to hire a Maine attorney and endeavored to enter a general appearance, rather than a special appearance, in the Maine suit, though belatedly. The interests of Maine as the forum state are "manifest" as previously discussed. Finally, Francis as plaintiff had an obvious interest in obtaining relief in Maine. Tom Brown has thus failed to show that it was at a "severe disadvantage" in being required to defend in Maine. *Electronic Media*, 586 A.2d at 1260.

Because, as a matter of law, the Maine court exercised valid *in personam* jurisdiction over Tom Brown, the grant of summary judgment by the Superior Court was correct.

*Affirmed.*

---

5. Tom Brown contends that it was merely an intermediary and thus cannot be said to have "contracted to provide insurance" under Maine law. However, given appellant's own description of its business as "a multi-line insurance agency with formal agency agreements with various insurance/surety companies which are listed in the Federal Registry and pre-qualified to place surety bonds on federal projects," there is little room for doubt that a Maine court applying Maine law would find that Tom Brown is an "insurer" as defined by Maine statutes. *See* Maine Insurance Code, 24–A ME.REV.STAT. ANN. §§ 3, 4, 706.

6. Tom Brown claims that because it did not solicit Francis's business, it did not "purposefully direct [its] activities at residents of a forum," *Electronic Media*, 586 A.2d at 1259, in a way that subjects it to Maine's jurisdiction. Solicitation of business is only one factor, and its absence is not determinative. *See A.F. Briggs Co. v. Starrett Corp.*, 329 A.2d 177, 179–80 (Me.1974) (finding valid personal jurisdiction even though defendant corporation did not directly solicit plaintiff's business, the solicitation and original contact having been made through a conduit firm).