STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        Docket No. CV-12-134
                                                        TDW - CUM - 10/11/2012

KIDS CROOKED HOUSE LLC,

        Plaintiff
                                    STATE OF MAINE
v.                          Cumberland. ss. Clerk's Office    ORDER

                                    OCT 1 1 2012

HANDS ON DETROIT KID CITY LLC, RECEIVED

        Defendant


        Before the court is defendant's motion to dismiss for lack of personal jurisdiction.

        The court held oral argument on the motion on October 9, 2012. At that time neither party sought an evidentiary hearing nor did any party seek to offer additional facts. Accordingly, the court will decide the motion based on the facts contained in the existing record. See Dorf v. Complastik Corp., 1999 ME 133 ¶¶ 13-14, 735 A.2d 984.

        As set forth in the Dorf decision, a plaintiff faced with a motion to dismiss for lack of personal jurisdiction is required to make a factual showing based on affidavits or other proof. However, the plaintiff need only make a prima facie showing, and the factual assertions offered by plaintiff should be construed in its favor. Id.

        In this case the factual showing made by plaintiff Kids Crooked House to support personal jurisdiction over defendant Hands On Detroit Kid City is contained in the affidavit of Amanda Pike and in certain emails attached thereto.

        Kids Crooked House is a Maine corporation that builds custom play structures for children. Hands On Detroit is a Michigan corporation which offers certain programs for children and which, according to the Pike affidavit and the allegations in the complaint,

contracted with Kids Crooked House to purchase one of the latter's play structures for delivery in Michigan.

The assertion of personal jurisdiction by Kids Crooked House is based on Maine's long arm statute. 14 M.R.S. §§ 704-A(2)(A) and 704-A(2)(I). That statute is co-extensive with the permissible exercise of personal jurisdiction under the due process clause. Dorf, 1999 ME 133 ¶ 9. Due process is satisfied if (1) Maine has a legitimate interest in the subject matter of the litigation; (2) Hands on Detroit reasonably should have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine courts comports with traditional notions of fair play and substantial justice. Estate of Hoch v. Stifel, 2011 ME 24 ¶ 25, 16 A.3d 137.

### 1. Legitimate Interest

As to whether Maine has a legitimate interest in the subject matter, the Law Court has repeatedly declared that Maine has an interest in providing a means of redress against nonresidents who incur obligations to Maine citizens or corporations. E.g., Fore LLC v. Benoit, 2012 ME 1 ¶ 7, 34 A.3d 1125. Maine's interest must go beyond mere citizenry, but that requirement is satisfied here by the presence of witnesses and records in Maine. See id.

### 2. Whether Hands On Detroit Could Reasonably Have Anticipated Litigation in Maine

This is the main point of contention between the parties. In August 2011 Hands On Detroit contacted Kids Crooked House in Maine through the Kids Crooked House website to state that it wished to purchase a custom play structure which was to be built

2

in Maine and then shipped to Michigan.[1] No one from Hands On Detroit ever visited Maine, but the Pike affidavit recounts that Hands On Detroit was significantly involved in the design of the structure, that 150-200 emails were exchanged between Kids Crooked House and Hands On Detroit, that the co-owners of Hands On Detroit engaged in 20 or more telephone calls with personnel at Kids Crooked House during the design and construction process, and that design drawings were sent to Hands On Detroit for approval and comment.

Ms. Pike's affidavit also states, without contradiction, that when the final design and contract were sent to Hands On Detroit, the co-owner of Hands On Detroit responded that it looked "perfect" and sent a down payment of 50 percent of the price. The structure was built in Maine and shipped to Michigan, and in December 2011 two employees of Kids Crooked House then travelled to Michigan for two days to oversee installation.

Citing Architectural Woodcraft Co. v. Read, 464 A.2d 210, 213 (Me. 1983), Hands On Detroit argues that a single contract with a Maine vendor, coupled with the use of interstate communications, is insufficient to establish that Hands On Detroit should reasonably have anticipated that it could be subjected to litigation in Maine. Kids Crooked House responds that under Electronic Media International v. Pioneer Communications, 586 A.2d 1256 (Me. 1991), the facts here are not limited to "a single isolated purchase by an out of state buyer" as in Architectural Woodcraft, 586 A.2d at 1258, but involved extensive discussions, design consultations, and negotiations over a

---

[1] Hands On Detroit's initial budget for the play structure, according to documents annexed to the Pike Affidavit, was $50,000.

[2] In Electronic Media, the Law Court cited the U. S. Supreme Court's decision in Burger King v. Rudzewicz, 471 U.S.462, 478-79 (1985), for the proposition that while the existence of a contract with an out-of-state party cannot alone establish minimum contacts for purposes of personal jurisdiction, the court must evaluate various factors including prior negotiations and the parties' actual course of dealing in determining whether the out of state party should reasonably have

four month period resulting in the conclusion that Hands On Detroit availed itself of the privilege of conducting business within Maine and should reasonably have anticipated that it could be subjected to litigation in Maine. See 596 A.2d at 1259-60.[2] As in this case, it does not appear that the out of state defendant in the Electronic Media case had ever been physically present in Maine. Moreover, this is a stronger case than Electronic Media to the extent that the transaction between Hands On Detroit and Kids Crooked House was initiated by the out of state defendant whereas the out of state defendant had not initiated the transaction at issue in the Electronic Media case. See id. at 1257-58.

The court finds this case more closely resembles Electronic Media, and that Kids Crooked House has established that Hands on Detroit should reasonably have anticipated that it might be subject to litigation in Maine.

### 3. Fair Play and Substantial Justice

Hands On Detroit bears the burden on this issue and has not demonstrated that the exercise of jurisdiction in Maine would not comport with traditional notions of fair play and substantial justice. Hands On Detroit has not submitted any affidavits or other proof that it would be gravely difficult and inconvenient to litigate in Maine. Indeed, it appears to the court that litigation in Maine will potentially pose equal burdens on the parties. Depositions and document requests directed to Hands On Detroit will probably have to be conducted in Michigan, which will potentially inconvenience Kids Crooked House. To the extent that witnesses or experts need to examine or photograph the

---

[2] In Electronic Media, the Law Court cited the U. S. Supreme Court's decision in Burger King v. Rudzewicz, 471 U.S.462, 478-79 (1985), for the proposition that while the existence of a contract with an out-of-state party cannot alone establish minimum contacts for purposes of personal jurisdiction, the court must evaluate various factors including prior negotiations and the parties' actual course of dealing in determining whether the out of state party should reasonably have anticipated the possibility of litigation in the forum state. 586 A.2d at 1259-60.

4

custom play structure – which remains in Michigan – that will also have to be done in Michigan, which will potentially present a further inconvenience to Kids Crooked House. On the other hand, if the case goes to trial, Hands On Detroit's witnesses will have to travel to Maine, which will potentially inconvenience Hands On Detroit. Thus, the potential burdens of litigation would appear to be shared relatively equally if the case remains in Maine. This precludes a finding that litigation in Maine would be inconsistent with traditional notions of fair play and substantial justice.

Finally, the court does not reach the issue of whether Maine law or Michigan law should apply to the merits of this controversy or whether the Maine Prompt Payment statute is applicable here. It is possible that, although subjecting Hands On Detroit to personal jurisdiction in Maine does not violate due process, the choice of law to be applied is an entirely separate question, which might favor the application of Michigan law on some or all of the substantive issues in this case.

The entry shall be:

Defendant's motion to dismiss is denied. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: October 10 , 2012

Thomas D. Warren
Justice, Superior Court

5

----------------------------------------------------------------------------

01 0000008319            STRIKE, CLIFFORD
     400 ALLEN AVENUE PORTLAND ME 04103
     F       HANDS ON DETROIT KID CITY LLC              DEF        LMTD       04/24/2012

02 0000009078            TAYLOR, ADAM S
     30 MILK STREET 5TH FLOOR PORTLAND ME 04101
     F       KIDS CROOKED HOUSE LLC                     PL         RTND       03/16/2012

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-12-134
CUM -TDW - 5/17/2013

KIDS CROOKED HOUSE LLC,

    Plaintiff

v.

                                                ORDER

HANDS ON DETROIT KID CITY LLC,

    Defendant

STATE OF MAINE
Cumberland ss Clerk's Office

RECEIVED

For the reasons stated at a hearing on the record today, the court will not enter a default as to liability based on Defendant's failure to file a notice of appearance by substitute counsel by March 25, 2013. A notice of appearance was filed approximately a month late on April 22, 2013.

No default has in fact been entered, and under the circumstances the court will not exercise its discretion to enter a default. Even if the Rule 55(c) standard for setting aside defaults were employed, the court could not find "gross neglect" under the circumstances of this case and conscientiousness on the part of the client can mitigate the principle that a client is responsible for the neglect of its attorney. Thomas v. Thompson, 653 A.2d 417, 420 (Me. 1995). This is particularly true where, unbeknownst to Hands on Detroit, its Maine counsel was in the process of withdrawing from the case. Although the court's February 22 order directed that a copy of that order be sent to Hands On Detroit as well as to Attorney Stacer, that apparently was not done.

There is some prejudice to plaintiff in terms of a two month delay in receiving discovery[1] but that prejudice can be mitigated by accelerating discovery from this point and by the award of attorneys fees as a discovery sanction. This ruling is also consistent with the strong preference in Maine law for deciding cases on their merits. Thomas v. Thompson, 653 A.2d at 420; Wescott v. Allstate Insurance Co., 397 A.2d 156, 163 (Me. 1979).

The scheduling order is amended as follows:

1. Defendant to respond to outstanding interrogatories and document request by May 30, 2013.

2. Discovery deadline August 28, 2013.

3. Plaintiff's expert designations, if any, to be filed by July 15, 2013.

4. Defendant's expert designations, if any to be filed by August 10, 2013.

5. ADR to be concluded by August 28, 2013.

6. Jury demand and fee due from plaintiff on August 20, from defendant on August 28, 2013.

7. Defendant is warned that any further failures to comply with discovery may result in preclusion order or default as to liability.

The entry shall be:

Procedural order entered. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: May 16, 2013

Thomas D. Warren
Justice, Superior Court

---

[1] Discovery was to be provided by March 25 under the February 22 order. Given the failure of notification to Hands on Detroit and the other circumstances set forth in defendant's affidavit and at today's hearing, that discovery must now be provided by May 30.

2

---------------------------------------------------------------------

| 04 0000004029 | TEETERS TRUMPY, H ILSE | | | |
|---|---|---|---|---|
| 30 MILK STREET 5TH FLOOR PORTLAND ME 04101 | | | | |
| F    KIDS CROOKED HOUSE LLC | | PL | RTND | 01/24/2013 |

| 05 0000005067 | FAIELLA, THOMAS | | | |
|---|---|---|---|---|
| 95 MAIN STREET AUBURN ME 04210 | | | | |
| F    HANDS ON DETROIT KID CITY LLC | | DEF | RTND | 04/22/2013 |