STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-12-200
TDW - CUM ✓ 11/30/2012

McCLAIN MARKETING GROUP,

     Plaintiff

v.

ORDER

KYRIBA CORP.,

     Defendant

STATE OF MAINE
Cumberland, ss. Clerk's Office

DEC 03 2012

RECEIVED

Before the court is defendant's motion to dismiss for lack of personal jurisdiction.

The court held oral argument on the motion on November 29, 2012. At that time neither party sought an evidentiary hearing nor did any party seek to offer additional facts beyond those in the affidavits previously submitted. Accordingly, the court will decide the motion based on the facts contained in the existing record. See Dorf v. Complastik Corp., 1999 ME 133 ¶¶ 13-14, 735 A.2d 984.

As set forth in the Dorf decision, a plaintiff faced with a motion to dismiss for lack of personal jurisdiction is required to make a factual showing based on affidavits or other proof. However, the plaintiff need only make a prima facie showing, and the factual assertions offered by plaintiff should be construed in its favor. Id.

The complaint in this case alleges that defendant Kyriba Corporation has breached a contract by failing to pay for certain services provided by plaintiff McClain Marketing Group and has been unjust enriched as a result. The factual showing made by the McClain Group in support of its assertion of personal jurisdiction over Kyriba is contained in the affidavits of Sue-Ellen McClain and Robert Perkins.

McClain Group is a Maine corporation which maintains offices in both Maine and New York City. Its principal offices and the majority of its employees are located in Maine. Sue-Ellen McClain (who is the owner and president of the McClain Group) describes the McClain Group's New York office as a "satellite office." Kyriba points out, however, that the McClain Group's New York office and its Maine office are given equal billing on Ms. McClain's business card.

Kyriba is a Delaware corporation whose principal place of business is in California and which maintains offices in New York City and in Europe. According to Ms. McClain's affidavit and the allegations in the complaint, Kyriba contracted with the McClain Group for certain marketing services, specifically related to branding, logo, and website design.

The assertion of personal jurisdiction by McClain is based on Maine's long arm statute. 14 M.R.S. §§ 704-A(2)(A) and 704-A(2)(I). That statute is co-extensive with the permissible exercise of personal jurisdiction under the due process clause. Dorf, 1999 ME 133 ¶ 9. Due process is satisfied if (1) Maine has a legitimate interest in the subject matter of the litigation; (2) Kyriba reasonably should have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine courts comports with traditional notions of fair play and substantial justice. Estate of Hoch v. Stifel, 2011 ME 24 ¶ 25, 16 A.3d 137.

### 1. Legitimate Interest

As to whether Maine has a legitimate interest in the subject matter, the Law Court has repeatedly declared that Maine has an interest in providing a means of redress against nonresidents who incur obligations to Maine citizens or corporations. E.g., Fore LLC v. Benoit, 2012 ME 1 ¶ 7, 34 A.3d 1125. Maine's interest must go beyond mere

citizenry, but that requirement is satisfied here by the presence of witnesses and records in Maine. See id. Kyriba does not contest that Maine has a legitimate interest in the subject matter of the litigation although it argues that New York has an equal or greater interest in light of the dealings between the parties.

2. Whether Kyriba Could Reasonably Have Anticipated Litigation in Maine

This is the point of contention between the parties. The affidavits contained in the record indicate that Kyriba first contacted the McClain Group in March 2011[1] and negotiations ensued that resulted in a May 11, 2011 contract under which the McClain Group would provide branding and website design and development services to Kyriba. Ms. McClain's affidavit states that she conducted the negotiations leading to the contract by telephone and email from the McClain Group's Portland office. The Kyriba representatives with whom she negotiated, principally Mauricio Barberi, were located in Kyriba's New York office.

During the performance of the contract, which lasted for approximately 11 months until April 2012, various meetings were held in New York. At least one meeting was also held in New York when the relationship between the parties was unraveling and Kyriba was expressing dissatisfaction with the McClain Group's services. No meetings were held in Maine.

Ms. McClain's affidavit states that the meetings were held in New York as a convenience to Kyriba and that Kyriba representatives were informed that the McClain

---

[1] There is no evidence as to where the initial contact occurred. Affidavits from officers of Kyriba state that it was important to Kyriba that McClain had a New York presence and that the fact that McClain had a New York office was a significant factor in Kyriba's decision to contract with the McClain Group.

3

Group personnel primarily involved with the services provided under the contract worked in Maine.

No one from Kyriba ever visited Maine, but the McClain and Perkins affidavits recount that Kyriba personnel exchanged numerous telephone calls and email communications with McClain employees in Maine and that there were a number of telephone conferences in which McClain representatives participated from Maine. Payments under the contract were sent by Kyriba to the McClain Group's office in Maine, and Kyriba representatives made a number of calls to Ms. McClain in Maine once the dispute that ultimately resulted in this lawsuit arose.

Citing Architectural Woodcraft Co. v. Read, 464 A.2d 210, 213 (Me. 1983), Kyriba argues that a single contract with a Maine vendor, coupled with the use of interstate communications, is insufficient to establish that Kyriba should reasonably have anticipated that it could be subjected to litigation in Maine. McClain Group responds that the facts here are not limited to "a single isolated purchase by an out of state buyer" as in Architectural Woodcraft, 586 A.2d at 1258, but involved extensive dealings over an eleven month period resulting in the conclusion that Kyriba availed itself of the privilege of conducting business in Maine and should reasonably have anticipated that it could be subjected to litigation in Maine. See Electronic Media International v. Pioneer Communications, 586 A.2d 1256, 1259-60 (Me. 1991).[2]

As in this case, it does not appear that any representatives of the out of state defendant in the Electronic Media case had ever been physically present in Maine.

---

[2] In Electronic Media, the Law Court cited the U. S. Supreme Court's decision in Burger King v. Rudzewicz, 471 U.S.462, 478-79 (1985), for the proposition that while the existence of a contract with an out-of-state party cannot alone establish minimum contacts for purposes of personal jurisdiction, the court must evaluate various factors including prior negotiations and the parties' actual course of dealing in determining whether the out of state party should reasonably have anticipated the possibility of litigation in the forum state. 586 A.2d at 1259-60.

However, the Electronic Media case included one factor that is not present here – the simultaneous authorization by the defendant in Electronic Media of a dealership in Maine and its sales in Maine through that dealership. 586 A.2d at 1260. The question is whether, without that added factor, the Law Court would have upheld jurisdiction in the Electronic Media case. Taking the Law Court at its word, the court concludes that where the affidavits of the plaintiff set forth ongoing business dealings and contacts between the parties over a number of months, those assertions are alone sufficient to lead to the conclusion that the defendant reasonably should have anticipated litigation in Maine.[3]

In this era of electronic communications, where parties can remotely attend out-of-state meetings through teleconferencing, the job of determining whether a party has purposely availed itself of the privilege of doing business in a state is more difficult than in the days where business was transacted in person. For the reasons set forth above, however, the court cannot sufficiently distinguish this case from Electronic Media and finds that the McClain Group has met its burden of satisfying the second requirement for establishing personal jurisdiction.

### 3. Fair Play and Substantial Justice

Kyriba bears the burden on this issue and has not demonstrated that the exercise of jurisdiction in Maine would not comport with traditional notions of fair play and substantial justice. Kyriba has not submitted any affidavits or other proof that it would

---

[3] See 586 A.2d at 1260, where the Law Court recounted business dealings between Electronic Media and Pioneer over a five month period that led the court to the conclusion that Pioneer by its conduct reasonably should have anticipated litigation in Maine. The Court stated this conclusion before finding that Pioneer's authorization of a Maine dealership provided "further indication" of Pioneer's purposeful availment of the privilege of conducting business in Maine. Id.

be gravely difficult and inconvenient to litigate in Maine. Indeed, it appears to the court that litigation in Maine will potentially place burdens on both parties. Since out of state defendants ordinarily do not have to submit to discovery in the forum state, depositions of Kyriba employees and document production by Kyriba will probably have to be conducted in New York or at Kyriba's other out-of-state offices, which will potentially inconvenience McClain. On the other hand, if the case goes to trial, Kyriba's witnesses will have to travel to Maine, which will potentially inconvenience Kyriba. The potential that both parties will be inconvenienced to some degree precludes a finding that litigation in Maine would be inconsistent with traditional notions of fair play and substantial justice.[4]

The entry shall be:

Defendant's motion to dismiss is denied. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: November 30, 2012

Thomas D. Warren
Justice, Superior Court

---

[4] Kyriba has also raised a forum non conveniens argument, but this is not a case where, applying the factors set forth in MacLeod v. MacLeod, 383 A.2d 39, 41-42 (Me. 1978), dismissal would be warranted on that ground.